Index No.  14-CV-4708 (ENV) (RLM)

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROY TAYLOR,

                                                                 Plaintiff,

                           -against-

NEW YORK CITY DEPARTMENT OF
CORRECTION, et al.,

                                                                 Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS**

---

ZACHARY W. CARTER
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007
*Attorneys for Defendants*

Of Counsel: Agnetha E. Jacob
Tel: (212) 356-0881
Fax: (212) 788-0940

---

Date of Service: July 29, 2015

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................... 1

ARGUMENT ...................................................................................................... 4

LEGAL STANDARD ......................................................................................... 4

POINT I .............................................................................................................. 5

    PLAINTIFF DID NOT EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES
    BEFORE FILING SUIT ................................................................................ 5

POINT II ............................................................................................................. 8

    PLAINTIFF DOES NOT STATE A CONSTITUTIONAL VIOLATION ............... 8

       a.  Plaintiff's Allegations Regarding the Lockdown Do Not State a
           Due Process Claim ......................................................................... 9

       b.  Plaintiff's Allegations Regarding Law Library Services Do Not State a
           Denial of Access to Courts Claim ................................................. 11

       c.  Plaintiff's Allegations Regarding Clothing and Bedding Do Not State an
           Unconstitutional Conditions of Confinement Claim ...................... 12

       d.  Plaintiff's Allegations Regarding Religious Services Do Not State a
           Free-Exercise Claim ...................................................................... 14

       e.  Plaintiff's Allegations Regarding Outgoing Mail Do Not State a
           Free-Speech Claim or a Denial of Access to Courts Claim .......... 16

       f.  Plaintiff's Allegations Regarding Social Services and Grievance Procedures
          Do Not State Any Constitutional Claim ....................................... 18

CONCLUSION ................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adesola v. County of Nassau Sheriff's Dep't,*
    No. 12-CV-1026, 2012 U.S. Dist. LEXIS 36911 (E.D.N.Y. Mar. 13, 2012) ......................... 13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................................... 4

*Bounds v. Smith,*
    430 U.S. 817 (1977) ...................................................................................................... 11

*Brown v. City of New York,*
    No. 14-CV-188, 2015 U.S. Dist. LEXIS 10469 (S.D.N.Y. Jan. 29, 2015) ............................ 18

*Bryant v. Hernandez,*
    No. 00-CV-3728, 2004 U.S. Dist. LEXIS 15344 (S.D.N.Y. July 19, 2004),
    *adopted by,* 2004 U.S. Dist. LEXIS 17394 (S.D.N.Y. Aug. 27, 2004) .................................. 10

*Bryant v. Wright,*
    451 Fed. Appx. 12 (2d Cir. 2011) .............................................................................. 5

*Caldwell v. Dep't of Corr.,*
    No. 14-CV-5551, 2015 U.S. Dist. LEXIS 11877 (E.D.N.Y. Jan. 30, 2015) .......................... 10

*Davis v. Goord,*
    320 F.3d 346 (2d Cir. 2003) ...................................................................................... 17

*DeLeon v. Doe,*
    361 F.3d 93 (2d Cir. 2004) ........................................................................................ 17

*Espinal v. Goord,*
    558 F.3d 119 (2d Cir. 2009) ...................................................................................... 5

*Farmer v. Brennan,*
    511 U.S. 825 (1994) ...................................................................................................... 12

*Frazier v. Coughlin,*
    81 F.3d 313 (2d Cir. 1996) ........................................................................................ 9

*Garvin v. Rivera,*
    No. 13-CV-7054, 2015 U.S. Dist. LEXIS 24616 (S.D.N.Y. Feb. 28, 2015) .......................... 6

*Giano v. Goord,*
    380 F.3d 670 (2d Cir. 2004) ...................................................................................... 8

*Gilliard v. Oswald,*
    552 F.2d 456 (2d Cir. 1977) ...................................................................................... 9, 10

*Gomez v. Toledo,*
    446 U.S. 635 (1980) ............................................................................................. 8

*Green v. McLaughlin,*
    480 Fed. Appx. 44 (2d Cir. 2012) ....................................................................... 5

*Hanton v. Mathiau,*
    29 Fed. Appx. 772 (2d Cir. 2002) ....................................................................... 15

*Hill v. Curcione,* 657 F.3d 116 (2d Cir. 2011) .......................................................... 5

*Hutto v. Finney,*
    437 U.S. 678 (1978) ............................................................................................. 12

*Jackson v. Mann,*
    196 F.3d 316 (2d Cir. 1999) ............................................................................... 14

*Johnson v. Goord,*
    445 F.3d 532 (2d Cir. 2006) ............................................................................... 16

*Johnson v. Stevens,*
    No. 12-CV-5186, 2014 U.S. Dist. LEXIS 133164 (E.D.N.Y. Sept. 22, 2014) ......... 5

*Jolly v. Coughlin,*
    76 F.3d 468 (2d Cir. 1996) ................................................................................. 15

*Jones v. Bock,*
    549 U.S. 199 (2007) ............................................................................................. 6

*Jones v. Goord,*
    435 F. Supp. 2d 221 (S.D.N.Y. 2006) ................................................................. 14

*Lewis v. Casey,*
    518 U.S. 343 (1996) ............................................................................................. 11

*Little v. Mun. Corp.,*
    No. 12-CV-5851, 2014 U.S. Dist. LEXIS 139010 (S.D.N.Y. Sept. 29, 2014) ......... 13

*Macias v. Zenk,*
    495 F.3d 37 (2d Cir. 2007) ................................................................................. 7

*Mastroianni v. Reilly,*
    602 F. Supp. 2d 425 (E.D.N.Y. 2009) ................................................................. 18

*Messina v. Mazzeo,*
    854 F. Supp. 116 (E.D.N.Y. 1994) ...................................................................... 14

*Ortiz v. McBride,* 380 F.3d 649 (2d Cir. 2004) .......................................................... 9

ii

*Phelps v. Kapnolas*,
   308 F.3d 180 (2d Cir. 2002) ................................................................................ 12

*Pierre-Louis v. Martinez*,
   No. 12-CV-2240, 2014 U.S. Dist. LEXIS 115236 (E.D.N.Y. Aug. 18, 2014).......................... 6

*Rhodes v. Chapman*,
   452 U.S. 337 (1981)........................................................................................... 12

*Robinson v. Jimminez*,
   No. 08-CV-902, 2012 U.S. Dist. LEXIS 43097 (E.D.N.Y. Mar. 6, 2012),
   a*dopted by* 2012 U.S. Dist. LEXIS 43095 (E.D.N.Y. Mar. 26, 2012) .................................... 16

*Robinson v. Sposato*,
   No. 13-CV-3334, 2014 U.S. Dist. LEXIS 30035 (E.D.N.Y. Feb. 18, 2014) .......................... 10

*Robles v. Cooney*,
   No. 03-CV-5184, 2005 U.S. Dist. LEXIS 1675 (E.D.N.Y. Feb. 7, 2005) .............................. 17

*Said Gssime v. Watson*,
   No. 09-CV-5581, 2012 U.S. Dist. LEXIS 20468 (E.D.N.Y. Feb. 16, 2012). ........................ 11

*Salahuddin v. Coughlin*,
   993 F.2d 306 (2d Cir. 1993) ................................................................................ 15

*Salahuddin v. Goord*,
   467 F.3d 263 (2d Cir. 2006) ................................................................................ 15

*Sandin v. Conner*,
   515 U.S. 472 (1995).......................................................................................... 9

*Seabrook v. City of New York*,
   No. 13-CV-6620, 2014 U.S. Dist. LEXIS 174207 (S.D.N.Y. Dec. 16, 2014) ........................ 6

*Sealey v. Giltner*,
   197 F.3d 578 (2d Cir. 1999) ................................................................................ 10

*Shapiro v. Cmty. First Servs., Inc.*,
   No. 11-CV-4061, 2014 U.S. Dist. LEXIS 42459 (E.D.N.Y. Mar. 27, 2014)......................... 15

*Smith v. City of New York,*
   No. 14-CV-443, 2015 U.S. Dist. LEXIS 40247 (S.D.N.Y. Mar. 30, 2015) ........................... 17

*Walker v. Schult*,
   717 F.3d 119 (2d Cir. 2013) ................................................................................ 4

*Wilkinson v. Austin*,
   545 U.S. 209 (2005)........................................................................................... 9

*Williams v. Goord*,
    111 F. Supp. 2d 280 (S.D.N.Y. 2000) ................................................................ 10

*Williams v. Metro. Det. Ctr.*,
    418 F. Supp. 2d 96 (E.D.N.Y. 2005) ................................................................... 6

*Williams v. Ramos*,
    No. 13-CV-826, 2013 U.S. Dist. LEXIS 183992 (S.D.N.Y. Dec. 23, 2013) .......................... 12

*Wilson v. Seiter*,
    501 U.S. 294 (1991) ..................................................................................... 13

*Woodford v. Ngo*,
    548 U.S. 81 (2006) ....................................................................................... 6

*Young v. Sposato*,
    No. 12-CV-2850, 2014 U.S. Dist. LEXIS 4175 (E.D.N.Y. Jan. 13, 2014) ............................ 7

**STATUTES**

42 U.S.C. § 1983 ............................................................................................. 5, 8

42 U.S.C. § 1997e(a) ......................................................................................... 5

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 4, 6

Federal Rule of Civil Procedure 8(a)(2) .................................................................... 4

## PRELIMINARY STATEMENT

Plaintiff Roy Taylor brings this 42 U.S.C. § 1983 action against various New York City prison officials, alleging that they violated his constitutional rights during his incarceration on Rikers Island between August 2013 and March 2014  by forcing him to wear a brown jumpsuit during a lockdown; restricting his access to the law library during the lockdown; refusing to provide him with a spare change of clothes; denying him winter clothes and blankets; denying him access to religious services; interfering with delivery of his regular and legal mail; denying him assistance in contacting courts and a transitional house; and ignoring his grievances.

Plaintiff's Complaint (Dkt. No. 1) should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because (i) Plaintiff did not exhaust his administrative remedies before filing suit and (ii) his allegations do not state any constitutional claim.[1]

## FACTUAL BACKGROUND[2]

Plaintiff bases his claims against Defendants on a slew of incidents that allegedly occurred during his incarceration at the Otis Bantum Correctional Center ("OBCC") and Eric M. Taylor Center ("EMTC") on Rikers Island between August 2013 and March 2014.

---

[1]  Plaintiff initially brought suit against the New York State Department of Corrections and Community Supervision ("DOCCS"), the Chairman of the Board of Parole Tina M. Stanford, Administrative Law Judge Eva Urrutia, the New York City Department of Correction ("DOC"), and 18 other individuals. (Dkt. No. 1.) By Order dated February 10, 2010, Judge Vitaliano *sua sponte* dismissed the claims against DOCCS, Chairman Stanford, ALJ Urrutia, DOC and five other individuals. (Dkt. No. 8.)

Only 13 individual defendants remain, and 8 of those could not be identified by DOC. This motion is made on behalf of Correction Officers Dunson and Ellis, counselors Berry and Hakim, and Captain Elam (the "Defendants"). However, the arguments set forth herein warrant dismissal of the action as against all defendants.

[2]  The allegations in the Complaint are deemed true for purposes of this motion only.

Plaintiff alleges that in August 2013, while he was housed at OBCC, defendant Warden Wettington ordered a month-long lockdown of Plaintiff's entire housing unit due to a violent incident involving five or more inmates from rival gangs. (Compl. ¶¶ 3, 11.)  During the lockdown, Plaintiff and other inmates in the unit were instructed to turn over all property, clothing, and legal work, and were required to wear brown jumpsuits. (*Id*. at ¶¶ 3, 5.)  They were further required to be escorted everywhere. (*Id*. at ¶ 4.) He alleges he and his unit were "arbitrarily placed in [an] unauthorized category status" without a hearing. (*Id*. at ¶ 11.)

Additionally, since only one correction officer was tasked with escorting these inmates and facilitating visits for inmates in other units, Plaintiff and other inmates in his unit were "often[] times" unable to go to the law library as a result of the officer "getting lost" or assisting another unit with visits. (*Id*. at ¶ 12.) When they were escorted to the law library, they were, due to the color of their jumpsuits, placed in a separate room that did not have a bulletin board containing addresses they needed or enough typewriters and computers for them to conduct research for their cases. (*Id*. at ¶ 12.) They also did not have access to notary services and were not able to speak with the legal coordinator. (*Id*.)

Plaintiff claims that due to only officer being available to escort inmates, he was denied Muslim religious services during the lockdown, and that OBCC Captain Elam and OBCC officers Cruz and Smith "took part in denying services to [him] by never calling the units where [he] resided each Friday." (*Id*. at ¶¶ 3-4.)

Plaintiff also makes allegations regarding the clothing and bedding provided to him at Rikers Island. Specifically, he claims that he was "subject to go months without a change of clothes" because OBCC and EMTC staff refused to clean or exchange his one jumpsuit or to provide him with a spare one; that staff did not provide him with "coats, boots, thermals,

underwear, top & bottom, socks and caps or gloves" during the winter of 2013, when temperatures dipped below zero; that EMTC staff did not provide him with a winter blanket because none were apparently available; and that he contracted a "serious cold" from a "dirty and contaminated" blanket he took from the bed of a transferred inmate. (Compl. at ¶¶ 5-7.)

Plaintiff also alleges that staff interfered with his outgoing regular and legal mail. In particular, Plaintiff alleges that some of his letters, including legal letters, were never mailed because the facilities did not have enough postage stamps for indigent inmates; that three letters were mailed without sufficient postage on them; that staff inappropriately placed "return to sender" or "wrong address" on some of his envelopes; and that EMTC correction officer Regina Dunson refused to mail 5 pieces of legal mail because Plaintiff was apparently "sending too much legal mail out." (*Id*. at ¶¶ 13-14.)

Finally, Plaintiff complains that OBCC counselors Hakim and Berry and EMTC counselors Moore and Gentry refused to help him contact state and federal courts or obtain his personal property from a transitional house, and that OBCC grievance coordinator Kennedy and EMTC grievance coordinator Mulvanny failed to answer or address any of his grievances. (*Id*. at ¶¶ 9-10.)

With respect to administrative remedies, Plaintiff claims he filed a grievance about all the claims raised in the Complaint with the grievance offices at OBCC and EMTC and with the DOCCS Chairman, but received no response. (*Id*. at § IV(F).) He asserts that he took several steps to appeal the decision, but does not describe such steps, other than to explain that he complained to the DOC Commissioner and the "CORB"[3] that his grievances had not been answered and requested that they conduct an investigation. (*Id*. at § IV(F), (I).)

---

[3]   It is unclear what "CORB" refers to.

Plaintiff describes his injuries as "virus, cold, mental anguish, the right to liberty and freedom, etc. . . .  and reserve the right to add more., pain and sufferring [sic]." (Compl. at § III.) He seeks $100,000 in punitive damages, $70,000 in compensatory damages. (*Id*. at 17.)

## ARGUMENT

### LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (*citing Twombly,* 550 U.S. at 556). While Federal Rule of Civil Procedure 8(a)(2) does not require that a plaintiff plead "detailed factual allegations," the plaintiff must assert more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," "labels and conclusions," or "naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (internal quotations omitted).

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted). In considering a motion to dismiss, a court must accept all of the factual allegations in the complaint as true and construe all reasonable inferences in the plaintiff's favor. *Id.* at 678. When the plaintiff is *pro se*, the court is further obligated to construe the complaint "liberally to raise the strongest arguments it suggests." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal brackets and quotations omitted). However, the court is not bound to accept as true "mere conclusory statements" in the complaint. *Iqbal,* 556 U.S. at 678. Even a *pro se* plaintiff's complaint must be dismissed at the

4

pleading stage if it fails to set forth sufficient factual allegations to state a claim. *See, e.g., Green v. McLaughlin,* 480 Fed. Appx. 44, 46 (2d Cir. 2012) (affirming dismissal of *pro se* plaintiff's complaint); *Bryant v. Wright*, 451 Fed. Appx. 12, 14 (2d Cir. 2011) (same).

Plaintiff's Complaint should be dismissed under Rule 12(b)(6) because (i) Plaintiff failed to exhaust his administrative remedies before bringing suit, and (ii) Plaintiff's allegations do not state any constitutional violation by any defendant.

## POINT I

### PLAINTIFF DID NOT EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES BEFORE FILING SUIT

Under the Prison Litigation Reform Act ("PLRA"), an inmate must exhaust all available administrative remedies before bringing a 42 U.S.C. § 1983 action regarding prison conditions. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement "'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes . . . [.]'" *Hill v. Curcione*, 657 F.3d 116, 124 (2d Cir. 2011) (*quoting Porter v. Nussle*, 534 U.S. 516, 532 (2002)). *See, e.g., Johnson v. Stevens*, No. 12-CV-5186, 2014 U.S. Dist. LEXIS 133164, at *1 (E.D.N.Y. Sept. 22, 2014) (inmate alleging violations of constitutional rights during incarceration at Rikers Island subject to PLRA's exhaustion requirement).

The procedure for exhaustion is not defined by the PLRA, but rather by the rules of the facility in which the inmate is incarcerated. *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009). The administrative remedial process available to Plaintiff at the time of the alleged

incidents was DOC's Inmate Grievance and Request Program ("IGRP").[4] *See Garvin v. Rivera*,
No. 13-CV-7054, 2015 U.S. Dist. LEXIS 24616, at *6-7 (S.D.N.Y. Feb. 28, 2015). Under the
IGRP, an inmate is first required to file a grievance with the facility's grievance office. *Id.* Once
the grievance office either issues an informal resolution or fails to respond within the specified
time frame, the inmate must next request a hearing before the Inmate Grievance Resolution
Committee ("IGRC"), then appeal to the facility's commanding officer and finally, appeal to the
Central Office Review Committee ("CORC"). *Id.* at *7. If an inmate does not receive a timely
disposition at any stage of the process, he must proceed to the next step. *Id.* at *10. "To complete
exhaustion, an inmate in DOC custody must proceed through all levels of the IGRP process."
*Pierre-Louis v. Martinez*, No. 12-CV-2240, 2014 U.S. Dist. LEXIS 115236, at *9 (E.D.N.Y.
Aug. 18, 2014). *See also Woodford v. Ngo*, 548 U.S. 81, 95 (2006) (to properly exhaust a claim
under the PLRA, an inmate must use "all steps" provided by the correctional facility and comply
with its prescribed deadlines and procedural rules).

A complaint may be dismissed under Rule 12(b)(6) where it is clear from the face
of the complaint that the plaintiff did not exhaust his administrative remedies. *See Jones v. Bock*,
549 U.S. 199, 214-15 (2007); *Williams v. Metro. Det. Ctr.*, 418 F. Supp. 2d 96, 101 (E.D.N.Y.
2005) ("The failure of a complaint to show that the exhaustion requirement has been satisfied
can be sufficient grounds to grant a 12(b)(6) motion to dismiss."). *See also Pierre-Louis*, 2014
U.S. Dist. LEXIS 115236, at *7 (dismissing complaint where *pro se* plaintiff failed to complete
each step of the IGRP procedure); *Young v. Sposato*, No. 12-CV-2850, 2014 U.S. Dist. LEXIS

---

[4]     Defendants respectfully request that the Court take judicial notice of the DOC grievance
procedure    effective    in    2013,    which    is    available    online    at
http://www.nyc.gov/html/doc/downloads/pdf/Directive_3376_Inmate_Grievance_Request_P
rogram.pdf. *See Seabrook v. City of New York*, 2014 U.S. Dist. LEXIS 174207, at *8 & n.4
(S.D.N.Y. Dec. 16, 2014) (taking judicial notice of the IGRP).

4175, at *28-29 (E.D.N.Y. Jan. 13, 2014) (dismissing complaint where *pro se* plaintiff's pleadings made clear that he had failed to exhaust his administrative remedies).

It is clear from the face of Plaintiff's Complaint that he failed to exhaust his administrative remedies before filing this suit. Plaintiff alleges that he filed grievances regarding all claims raised in the Complaint with the grievance offices at OBCC and EMTC and with the DOCCS Chairman, but received no responses. Under the IGRP, Plaintiff was required to appeal these non-responses by requesting a hearing before the IGRC and then appealing to the warden and the CORC. *See Pierre-Louis*, 2014 U.S. Dist. LEXIS 115236, at *9 ("[T]he IGRP places the burden on the inmate to request a formal hearing if he has not received a response to his grievance within five days of filing it."). Plaintiff, however, did not request a hearing, and accordingly failed to exhaust his administrative remedies. *See Johnson*, 2014 U.S. Dist. LEXIS 133164, at *5 ("[C]ourts in this Circuit have repeatedly held that a prisoner in [DOC] custody [...] who has not received a response to a grievance but has not requested a hearing has not exhausted his administrative remedies for purposes of the PLRA.") While Plaintiff complained to the DOC Commissioner and the "CORB," these actions are outside the grievance procedure and do not satisfy the exhaustion requirement. *See Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (putting prison officials "on notice" or otherwise making informal complaints to prison staff is insufficient to satisfy PLRA's exhaustion requirement).

As Plaintiff impermissibly brought this suit before exhausting his available administrative remedies, his Complaint should be dismissed. *See Macias*, 495 F.3d at 41 (A "prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction and the benefits of exhaustion can be realized only if the prison grievance system is given a fair

opportunity to consider the grievance.") (internal brackets and quotations omitted) (*citing Woodford v. Ngo,* 548 U.S. 81, 94-95 (2006)); *Giano v. Goord*, 380 F.3d 670, 677-78 (2d Cir. 2004) ("allowing prisoners to bypass administrative procedural rules with impunity would subvert Congress's desire to 'afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case'") (*quoting Porter,* 534 U.S. at 525)).

**POINT II**

**PLAINTIFF DOES NOT STATE A CONSTITUTIONAL VIOLATION**

To state an action under 42 U.S.C. § 1983, a plaintiff must allege that some person, acting under color of state law, deprived him of a federal right, privilege, or immunity. *See, e.g., Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Construing the complaint liberally, Plaintiff appears to assert that defendants (a) violated his federal due process rights by subjecting him to lockdown without any hearing, (b) violated his constitutional right of access to the courts by restricting his access to law library services during the lockdown, (c) subjected him to unconstitutional conditions of confinement by refusing to provide him with a spare change of clothes, or winter clothes and blankets during the winter, (d) violated his right to exercise his religion by denying him access to Muslim services, (e) violated his right to free speech and access to the courts by failing to mail some of his letters, and (f) violated his constitutional rights by refusing to assist him in his efforts to contact courts and a transitional house and by ignoring his grievances.[5] As explained below, none of these six claims state any constitutional violation.

---

[5]   While Plaintiff also alleges that he and other inmates were fed through trays slid under their cells for several days during the lockdown, and that OBCC Corrections Officer Braski either "stole or lost" Plaintiff's designer belt, he does not appear to state a cause of action based on these allegations and did not name Officer Braski as a defendant. (Compl. ¶¶ 3, 5, 11.)

### a.  Plaintiff's Allegations Regarding the Lockdown Do Not State a Due Process Claim

First, Plaintiff claims Defendant Warden Wettington violated his due process rights by placing him on lockdown and assigning him a higher security classification for one month without a hearing. To succeed on a procedural due process claim, a plaintiff must establish "(1) that he possessed a liberty interest and (2) that the defendants deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004). A liberty interest may arise from the Due Process Clause of the U.S. Constitution or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To claim a state-created liberty interest, an inmate must show that the challenged prison condition imposed an "atypical and significant hardship" on him "in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995), and that the state granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that condition. *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

Neither the Due Process Clause nor state law confers a liberty interest on inmates in avoiding a month-long lockdown. *See, e.g. Sandin*, 515 U.S. at 480 ("The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed […] [and] transfer to less amenable quarters for nonpunitive reasons [is] ordinarily contemplated by a prison sentence."); *id.* at 485-486 (inmate's placement in segregated confinement for 30 days did not present the type of "atypical, significant deprivation" in which a state might conceivably create a liberty interest); *Gilliard v. Oswald*, 552 F.2d 456, 459 (2d Cir. 1977) (no due process violation where inmates held in restrictive housing for over a month plaintiffs without any hearing); *Bryant v. Hernandez*, No. 00-CV-3728, 2004 U.S. Dist. LEXIS 15344, at *30-31 (S.D.N.Y. July 19, 2004), *adopted by,* 2004 U.S. Dist. LEXIS 17394 (S.D.N.Y.

Aug. 27, 2004) (inmate had no state-created liberty interest in avoiding lockdown, even if it lasted for approximately three weeks). Indeed, inmates have no liberty interest in avoiding even longer and more segregated housing conditions. *See, e.g., Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (administrative segregation of up to 101 days, without more, insufficient to state a due process claim); *Williams v. Goord*, 111 F. Supp. 2d 280, 289 (S.D.N.Y. 2000) (no state-created liberty interest in avoiding 75 days of administrative segregation).

Additionally, inmates also do not have a federally- or state protected liberty interest in being free from a particular security classification. *See Caldwell v. Dep't of Corr.*, No. 14-CV-5551, 2015 U.S. Dist. LEXIS 11877, at *11 (E.D.N.Y. Jan. 30, 2015) ("It is well-established that a prisoner's administrative classification does not give rise to a protectable liberty interest under the Due Process Clause."); *Robinson v. Sposato*, No. 13-CV-3334, 2014 U.S. Dist. LEXIS 30035, at *11 (E.D.N.Y. Feb. 18, 2014) ("prisoners have no liberty interest that protects them from security classification or mis-classification").

"Prison authorities must of necessity be allowed wide discretion in the use of protective confinement for the purpose of protecting the safety and security of the prison and its general population." *Gilliard*, 552 F.2d at 459 (internal quotations and citation omitted). In this case, OBCC Warden Wettington, who is charged with the ensuring the safety of all inmates in his facility, decided in response to a violent incident involving two rival gangs, to place Plaintiff's housing unit on lockdown and to assign all inmates within the unit a higher security status. Since neither the imposition of a month-long lockdown nor the assignment of a higher security status constituted the deprivation of a protected liberty interest, Warden Wettington was not constitutionally required to afford Plaintiff notice, a hearing, or any other process before taking such action. Plaintiff's due process claim should accordingly be dismissed.

     **b.   Plaintiff's Allegations Regarding Law Library Services Do Not State a Denial of Access to Courts Claim**

Second, Plaintiff alleges that defendants violated his constitutional right of access to the courts by limiting his access to law library services during the lockdown. Inmates have a constitutional right to reasonable access to courts. *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *overruled on other grounds, Lewis v. Casey*, 518 U.S. 343 (1996). Prison law libraries and legal assistance programs are one means of ensuring inmates such access. *Lewis*, 518 U.S. at 351. There is, however, no "abstract, freestanding right to a law library or legal assistance." *Id.* Accordingly, to establish a violation of the right to access courts based on alleged shortcomings in a prison's library or legal assistance program, an inmate must show that such deficiencies "hindered his efforts to pursue a legal claim." *Id.* He cannot merely plead that his "prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* In *Said Gssime v. Watson*, this Court held that an inmate failed to state an access-to-courts claim where he did not allege that "any actual harm befell him" as a result of being denied access to the law library and legal materials. No. 09-CV-5581, 2012 U.S. Dist. LEXIS 20468, at *9-10 (E.D.N.Y. Feb. 16, 2012). Plaintiff's claim here should similarly be dismissed because while he alleges that he had limited access to OBCC's law library and legal services during the lockdown, he does not allege that the restricted access hindered his efforts to pursue any legal claim.

Furthermore, Plaintiff has failed to allege any facts from which it could be inferred that OBCC lacked a legitimate penological interest in temporarily confining him and limiting his access to the law library. "[L]ockdown prisoners routinely experience delays in receiving legal materials or legal assistance, [...] but so long as they are the product of prison regulations reasonably related to legitimate penological interests, such delays are not of constitutional significance, even where they result in actual injury[.]" *Lewis*, 518 U.S. at 362

(noting that delays in access to courts for up to 16 days can be justifiable if related to legitimate penological interests). *See also Williams v. Ramos*, No. 13-CV-826, 2013 U.S. Dist. LEXIS 183992, at *12 (S.D.N.Y. Dec. 23, 2013) (inmate failed to state constitutional claim based on denial of access to law library during 9-day lockdown because plaintiff did not allege that prison lacked any legitimate penological interest in imposing lockdown). Here, Plaintiff's access-to-courts claim should additionally be dismissed because his allegations indicate that Warden Wettington had legitimate reasons for placing Plaintiff's housing unit on lockdown.

### c.   Plaintiff's Allegations Regarding Clothing and Bedding Do Not State an Unconstitutional Conditions of Confinement Claim

Third, Plaintiff alleges that defendants subjected him to unconstitutional conditions of confinement by (i) not providing him with a clean set or spare set of clothes for months and (ii) denying him seasonally appropriate clothes and blankets during the winter of 2013. Prisoners have a constitutional right to be free from "cruel and unusual punishment." *Hutto v. Finney*, 437 U.S. 678, 685 (1978). While inmates are not entitled to "comfortable prisons," the conditions of their confinement can give rise to constitutional violation. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To prove such a violation, an inmate must show (1) that his injury is objectively "sufficiently serious" in that he was denied "the minimal civilized measure of life's necessities," and (2) that prison officials showed "deliberate indifference" to his health or safety. *Farmer*, 511 U.S. at 834 (internal quotations omitted). To meet the objective element, he must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* To satisfy the subjective element, he must show that prison officials knew of and disregarded "an excessive risk to [his] health or safety." *Id.* at 837.

Plaintiff's allegations that defendants refused to provide him with a spare

jumpsuit or clean or exchange his one jumpsuit are deficient because there is no constitutional right to an extra jumpsuit and Plaintiff does not allege that he could not clean his jumpsuit himself. *See Little v. Mun. Corp.*, No. 12-CV-5851, 2014 U.S. Dist. LEXIS 139010, at *27 (S.D.N.Y. Sept. 29, 2014) (to state constitutional violation based on prison's refusal to launder clothes, inmate must allege denial of "alternate opportunity or means" to clean clothing himself). The allegations further do not meet either element of a conditions-of-confinement claim. Plaintiff does not plead the objective element: he fails to allege that the lack of clean or extra clothes posed a "substantial risk of serious harm" to him and notes only that a spare jumpsuit would have been handy after exercising. (Compl. ¶ 6.)  He also does not meet the subjective element because while he claims that several defendants are "involved" in the alleged deprivation, he does not allege that any of them knew that the lack of a spare or clean jumpsuit posed an excessive risk to his health, or that they ignored that risk. (*Id.* at ¶ 8.)

Similarly, Plaintiff's allegation that he was not issued winter gear or a blanket during the winter months fails to state a constitutional violation. While a low cell temperature at night combined with a failure to issue blankets could establish a constitutional violation, *Wilson v. Seiter*, 501 U.S. 294, 304 (1991), Plaintiff here does not plead one. *Adesola v. County of Nassau Sheriff's Dep't* is instructive. In that case, the plaintiff complained that the "cells are cold, no heat in the cells, the showers are freezing, its freezing" but did not allege any personal injuries resulting from the conditions described or allege that any of the conditions were imposed with deliberate indifference. *Adesola,* No. 12-CV-1026, 2012 U.S. Dist. LEXIS 36911, at *13 (E.D.N.Y. Mar. 13, 2012). This Court accordingly found that the plaintiff failed to state a constitutional claim. *Id.* at *13-14. Similarly here, Plaintiff states no injury other than a cold, and common colds do not constitute a serious injury. *See Jones v. Goord*, 435 F. Supp. 2d 221, 245

13

(S.D.N.Y. 2006). Plaintiff also does not allege that any defendant knew he was facing any serious risk of harm; on the contrary, with respect to blankets, Plaintiff notes that no blankets were provided simply because none were available.

Plaintiff has failed to allege either the objective or subjective prongs of a conditions-of-confinement violation; his claims regarding clothing and bedding should accordingly be dismissed.

### d. Plaintiff's Allegations Regarding Religious Services Do Not State a Free-Exercise Claim

Fourth, Plaintiff claims that his right to freely exercise Islam was violated during the lockdown because only one officer was assigned to escort inmates to various sites and by three officers who "never" called his unit on Fridays for religious services. Inmates are entitled to a reasonable accommodation of their religious beliefs. *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999). To plead a violation of this right, an inmate must allege (1) that he requested the right to practice his religion, by, for example, asking for access to books or religious services, and (2) that he was denied that right. *Messina v. Mazzeo*, 854 F. Supp. 116, 137 (E.D.N.Y. 1994) (dismissing free-exercise claim based on denial of kosher food because inmate did not allege that he told prison officials he required kosher food). Here, Plaintiff fails to allege the first element. While he conclusorily alleges that he was denied access to Muslim services, he does not indicate that he conveyed his desire to attend services to any defendant. Plaintiff accordingly fails to adequately plead a free-exercise claim.

However, even if Plaintiff had met the pleading requirement, his allegations do not state a constitutional violation. To establish a violation of the right to religious freedom, an inmate must make a threshold showing (1) that he sincerely held certain religious beliefs, and (2) that prison officials "substantially burden[ed]" those beliefs. *Salahuddin v. Goord*, 467 F.3d 263,

14

274-275 (2d Cir. 2006).[6] "[A] substantial burden exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (internal quotations and citation omitted). An inmate's right to practice his religion is "not absolute." *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993). Thus, while "[p]risoners have a constitutional right to participate in congregate religious services," *id.* at 308, missing one or two religious services is a "*de minimis*, or insubstantial, burden on an inmate's ability to freely exercise his religion," *Shapiro v. Cmty. First Servs.*, *Inc.*, No. 11-CV-4061, 2014 U.S. Dist. LEXIS 42459, at *33 (E.D.N.Y. Mar. 27, 2014) (internal quotations and citation omitted). *See also Hanton v. Mathiau,* 29 Fed. Appx. 772, 773 (2d Cir. 2002) (affirming lower court's holding that denial of access to religious services on two days did not violate inmate's constitutional right to practice his religion).

Plaintiff's allegations do not meet the threshold requirement to establish a free-exercise violation because he does not show that defendants substantially burdened any sincerely held religious belief. This Court's analysis in *Shapiro v. Cmty. First Servs.*, *Inc.* is helpful. In that case*,* the *pro se* plaintiff alleged that the defendant employees of a half-way house, to which he was sentenced, violated his right to freely exercise his religion by failing to allow him to attend weekly Quaker services. 2014 U.S. Dist. LEXIS 42459, at *6. The Court held that, assuming plaintiff could even bring the claim against private employees, his free-exercise claim would fail under Rule 12(b)(6) because (1) he did not allege a sincerely held belief in the Quaker religion, (2) he did not allege that attending weekly services was a religious experience mandated by the

---

6   If this showing is made, the defendants next "bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Goord*, 467 F.3d at 275. The burden then shifts back to the prisoner to "show that these articulated concerns were irrational." *Id*. (internal brackets and quotations omitted). As Plaintiff cannot even meet the threshold requirement, these subsequent steps in the analysis are not further discussed in this memorandum.

Quaker religion, and (3) he failed to provide the dates on which he was allegedly prevented from attending Quaker services. *Id.* at *31-33. Regarding the third deficiency, this Court noted that even if plaintiff had missed more than a *de minimis* number of services, "by neglecting to specify the relevant dates […], plaintiff fail[ed] to adequately establish that defendants' conduct was more than an insubstantial burden on his ability to freely exercise his religion." *Id*. at *33.

Similarly here, Plaintiff only alleges that he was denied access to Muslim services during the lockdown and by three defendants.[7] (Compl. ¶¶ 3-4.) This conclusory allegation does not plausibly support any viable claim because like the plaintiff in *Shapiro*, Plaintiff fails to (1) allege a sincerely held belief in Islam or even allege that he is a practicing Muslim, (2) explain the significance of attending services in Islam, or (3) specify how many times he was allegedly denied access to religious services.[8] Plaintiff's failure to allege facts sufficient to show anything more than an insubstantial burden on his constitutional right to practice Islam further warrants dismissal of his free-exercise claim.

### e. Plaintiff's Allegations Regarding Outgoing Mail Do Not State a Free-Speech Claim or a Denial of Access to Courts Claim

Fifth, Plaintiff alleges that defendants violated his rights to free speech and access to the courts by interfering with his regular and legal outgoing mail.

Inmates have a "right to the free flow of incoming and outgoing mail." *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006). To establish a violation of this right, an inmate must show that prison officials "regularly and unjustifiably" interfered with his mail. *Davis v. Goord*,

---

[7]   Plaintiff does not specify whether the denial of access to religious services occurred only during the lockdown.

[8]   The number of services Plaintiff was allegedly denied is further relevant to determing whether Defendants are entitled to qualified immunity.  *See Robinson v. Jimminez*, No. 08-CV-902, 2012 U.S. Dist. LEXIS 43097, at *23-26 (E.D.N.Y. Mar. 6, 2012), a*dopted by* 2012 U.S. Dist. LEXIS 43095 (E.D.N.Y. Mar. 26, 2012).

320 F.3d 346, 351 (2d Cir. 2003).  Here, Plaintiff alleges that some of his regular outgoing mail was not mailed out because the facility did not have enough free postage for indigent inmates, including Plaintiff, and that three letters were mailed without sufficient postage. These allegations do not state a constitutional claim because inmates do not have a constitutional right to unlimited free postage for non-legal mail. *Johnson*, 445 F.3d at 534. Plaintiff's conclusory allegation that staff inappropriately placed "return to sender" and "wrong address" stickers on mail is also insufficient to state a constitutional claim because there is no indication that such alleged interference was "regular." *Smith v. City of New York,* No. 14-CV-443, 2015 U.S. Dist. LEXIS 40247, at *11 (S.D.N.Y. Mar. 30, 2015) ("Plaintiff's conclusory allegation that prison staff has occasionally delayed, sabotaged, and trashed his outgoing mail does not adequately allege a "regular and unjustifiable interference.").

To establish a violation of the right to access courts based on interference with legal mail, an inmate must show that a defendant's actions "actually hindered his efforts to pursue a legal claim or otherwise prejudiced his legal action." *DeLeon v. Doe*, 361 F.3d 93, 94 (2d Cir. 2004) (internal quotations and citation omitted) (affirming dismissal of inmate's § 1983 claim alleging interference with his legal and personal mail). *See also Robles v. Cooney*, No. 03-CV-5184, 2005 U.S. Dist. LEXIS 1675, at *5 (E.D.N.Y. Feb. 7, 2005) ("Interference with mail sent by an inmate to a court may implicate the right of access to the courts, provided that the interference was deliberate and caused actual injury."). Plaintiff has not stated an access-to-court claim based on the facilities' alleged failure to send out his legal mail because Plaintiff does not assert that this conduct resulted in any actual injury.

Plaintiff's allegations concerning interference with his regular and legal mail are insufficient to state any constitutional claim and should therefore be dismissed.

**f.   Plaintiff's Allegations Regarding Social Services and Grievance Procedures Do Not State Any Constitutional Claim**

Finally, Plaintiff attempts to plead a constitutional deprivation based on the facilities' social services counselors' refusal to help him contact courts and retrieve personal property from a transitional house, and the facilities' grievance coordinators' failure to respond to his grievances. However, neither of these claims can form the basis of a § 1983 claim. *See Brown v. City of New York*, No. 14-CV-188, 2015 U.S. Dist. LEXIS 10469, at *10 (S.D.N.Y. Jan. 29, 2015) (dismissing inmate's claims regarding "deficient or nonexistent" social services on Rikers Island because "jail inmates do not have a free-standing, affirmative constitutional right to social services"); *Mastroianni v. Reilly*, 602 F. Supp. 2d 425, 437 (E.D.N.Y. 2009) (holding that "the grievance procedure or lack thereof cannot itself form the basis of a Section 1983 claim because there is no constitutional right to a grievance mechanism"). Accordingly, the Court should dismiss Plaintiff's claims regarding social services and grievance procedures.

As Plaintiff has not plausibly pled the violation of any constitutional right, his Complaint should be dismissed for failure to state a claim.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their motion and dismiss the Complaint in its entirety, and grant them such other and further relief as the Court deems just and proper.

Dated:     New York, NY
             July 29, 2015

                                  ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
*Attorney for Defendants Dunson, Ellis,*
*Berry, Hakim, and Elam*
100 Church Street
New York, NY 10007
Tel: (212) 356-0881

By:  /s/ Agnetha E. Jacob        
      Agnetha E. Jacob
      Assistant Corporation Counsel

19