UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------- x
ROY TAYLOR,

          Plaintiff,

-against-

OBCC-GRIEVANCE COORDINATOR
KENNEDY, OBCC C.O. SMITH,
OBCC CAPT ELAM, OBCC WARDEN
WETTINGTON, SOCIAL SERVICE
COUNSELORS BERRY and HAKIM,
OBCC CLOTHES BOX C.O. ELLIS,
OBCC C.O. CRUZ, EMTC C.O.
DUNSON, SOCIAL SERVICE
COUNSELORS MR. MOORE and
DENTRY, COORDINATOR
MULVANNY, and EMTC CLOTHES
BOX C.O. SCIPION,

          Defendants.
---------------------------------------------- x

MEMORANDUM & ORDER

14 Civ. 4708 (ENV) (RML)

VITALIANO, D.J.

    *Pro se* plaintiff Roy Taylor filed this § 1983 action alleging that defendants violated his constitutional rights during his detention at the Otis Bantum Correctional Center ("OBCC") and the Eric M. Taylor Center ("EMTC") on Rikers Island. (Compl., ECF No. 1). In a Memorandum and Order, dated January 28, 2015, plaintiff's claims against several defendants were dismissed. (Mem. & Order, ECF No. 8). Presently before the Court is the motion by Correction Officers ("C.O.s") Dunson and Ellis, social service counselors Berry and Hakim, and Captain Elam to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted. (Defs. Mot., ECF No. 34).[1] In addition,

---

[1] There are other defendants who were not dismissed from this lawsuit by the January 28, 2015 order, but who are not among the movants. These defendants were not served and have not been served because Taylor did not provide sufficient identifying information for the United States

1

Taylor filed a second motion for reconsideration of the January 28, 2015 order. (Pl. Mot., ECF No. 30). For the reasons stated below, (1) plaintiff's second motion for reconsideration is denied in principal part, but his claims against Mailroom C.O. Kelly are reinstated, and (2) the motion by certain defendants to dismiss the complaint is denied without prejudice and with leave to renew.

## Background

As alleged in Taylor's complaint, in August 2013, he was incarcerated following a guilty plea to two counts of disorderly conduct while on post-release supervision. (Compl. ¶ 1; Def. Mem. at 1, ECF No. 35). In October 2013, at a time when Taylor was in court, a violent incident occurred at OBCC among five or more rival gang members. (Compl. ¶¶ 3, 5-6, 11). As a result, defendant OBCC Warden Wettington placed Taylor's unit on lockdown for one month, required unit detainees to turn over their property and legal work, and had them wear brown jumpsuits. (*Id.*).[2]

Following these events, these detainees were not permitted a second set of clothing, such that Taylor could not, for example, change into a new jumpsuit after exercising. (Compl. ¶¶ 5-6). Taylor claims that "[t]hus, inmates and plaintiff [were] subject to go months without a

---

Marshals Service to complete service. (Summonses Returned Unexecuted, ECF Nos. 15-25). For instance, Taylor did not provide full names for most of the unserved defendants. Prior to considering a *Valentin* order, *see Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), however, a district court must first assess the merits of the claims made in the pleading. *See Washington v. Westchester Cty. Dep't of Corr.*, No. 13 Civ. 5322 (KPF), 2015 WL 408941, at *6 (S.D.N.Y. Jan. 30, 2015) (considering a motion to dismiss prior to issuing a *Valentin* order).

[2] Taylor mentions that he was "so frustrated" by this turn of events that he refused to return to his cell and was placed in the OBCC punitive segregation unit for ten days, during which time C.O. Braski "stole or lost" his belt. (Compl. ¶ 5). C.O. Braski was not named as a defendant in this action, an omission noted by the moving defendants and not addressed by Taylor. (Defs. Mem. 8 n.5, ECF No. 35). It is apparent, therefore, that Taylor does not intend to state a claim against C.O. Braski.

change of clothes," and they had to wear "jumpsuits without a change for 2 months." (*Id.* ¶ 6). It is unclear whether Taylor is further alleging that his jumpsuit was not laundered during that time. He also claims that detainees were denied winter clothing ("winter coats, boots, thermals, underwear, top & bottom, socks, and cap or gloves") and winter blankets, despite temperatures dipping below zero during the winter months. (*Id.* ¶ 6). Although there were no blankets available when he arrived, he found a transferred detainee's dirty blanket, which, he alleges, infected him with "a serious cold." (*Id.* ¶ 7).[3] Taylor identifies those defendants responsible for the lack of clothing and blankets as Clothes Box C.O.s Ellis and Scipion, as well as Warden Wettington. (*Id.* ¶ 8).

As part of the lockdown, Warden Wettington required inmates to be escorted on their travel. Only one officer was assigned to this task, resulting in Taylor being prevented from attending Muslim religious services on Fridays. (*Id.* ¶¶ 3-4). Taylor identifies defendants Captain Elam and C.O.s Cruz and Smith as denying him access to religious services. Similarly, he was denied his regular access to the law library. When his unit was able to use the library, though, they were not permitted to mix with the general population, but were relegated to a separate room with, he asserts, inferior resources. (*Id.* ¶ 12).

Taylor alleges, further, that social service counselors Hakim, Berry, Moore and Gentry, who are each named as defendants, ignored his requests to contact the courts and his requests concerning personal property he was trying to retrieve from a transition house. (*Id.* ¶¶ 9-10). Likewise, he claims that defendant Grievance Coordinator Mulvanny ignored his grievances. (*Id.*)

---

[3] His medical records state that Taylor was diagnosed with a common cold on February 12, 2014, acute bronchitis on or around February 18, 2014, and acute rhinitis and cough on February 27, 2014. (Pl. Mem. Ex. C at 39-43, ECF No. 33-3).

3

Taylor next alleges interference with his legal and personal mail. For instance, his legal mail was not always sent out due to a lack of postage for indigent inmates, and it was sometimes held for up to 90 days and/or thrown out. (Compl. ¶ 13). He claims that legal or personal mail was sent with insufficient postage on 3 occasions and that defendants wrongly marked mail "return to sender wrong address." (*Id.*). At EMTC, on or around February 2014, C.O. Dunson allegedly refused to accept 5 pieces of legal mail in one day, and told Taylor he "was sending too much legal mail out." (*Id.* ¶ 14). Taylor alleges that the "same thing occurred at OBCC" with Mailroom C.O. Kelly. (*Id.*).

Taylor filed grievances and letters concerning these complaints, but "never received any response after more than 90 days." (Compl. at 15). Taylor alleges he took "several" steps to appeal his grievances, but the complaint does not explain what actions he took. (*Id.*). After this deficiency was raised on the motion to dismiss (Defs. Mem. 3), Taylor submitted copies of the grievances and letters he filed. (Pl. Mem. Exs. A-D, ECF Nos. 33-1, 33-2, 33-3, 33-4; Compl. at 15-16). From September 2013 to January 2014, he filed 15 grievance forms addressing, sporadically, the various allegations described above.[4] From September 2013 to February 2014, he also sent 12 letters to various officials and entities, including several letters to New York City

---

[4] Specifically, plaintiff submitted Inmate Grievance and Request Program ("IGRP") Statement forms, dated September 25, 2013 (re: legal mail), October 1, 2013 (re: legal mail), October 1, 2013 (re: failure to respond to grievances within IGRP's required timeframe); October 23, 2013 (re: lockdown), October 23, 2013 (re: social services), October 23, 2013 (re: law library), November 9, 2013 (re: law library, social services, religious services, and "legal and grievance"), November 10, 2013 (re: religious services), November 20, 2013 (re: law library and legal mail), November 21, 2013 (re: legal mail), December 12, 2013 (re: social services), January 2, 2014 (re: law library, social services, and "grievance services"), January 7, 2014 (re: law library/notary), January 7, 2014 (re: law library/supplies), and January 11, 2014 (re: blanket). (Pl. Mem., Ex. A at 19-20, 22-23, 25, 29-34 ECF No. 33-1, Ex. B at 1-4, 6, ECF No. 33-2, Ex. C at 1-4, 6, 10-16, 18 ECF No. 33-3, Ex. D at 36, ECF No. 33-4). Plaintiff also included grievances he filed on claims not raised in this lawsuit. (*See, e.g.*, Pl. Mem. Ex. A at 21, 24, 39, Ex. B at 6, 8-10, 12, 14-19, Ex. C at 5).

Correction Commissioner Dora Schriro and one letter to the Central Office Review Committee ("CORC"), with a similar mix of complaints.[5]

The January 28, 2015 order dismissed some of Taylor's claims pursuant to 28 U.S.C. §§ 1915(a)-(b)(1), in that the claims pleaded against the New York City Department of Correction ("DOC"), New York State Department of Corrections and Community Supervision ("DOCCS"), Administrative Law Judge Eva Urrutia, and Tina. M. Stanford, the chairman of the Board of Parole, were dismissed on applicable immunity grounds and for failure to state a claim. His claims against C.O. Santiago, Security C.O. Thompson, Parole Officer Crome, Deputy Warden Nance, and Mailroom C.O. Kelly were dismissed for failure to identify any direct or personal involvement in the alleged constitutional deprivations. (Mem. & Order 4-9, ECF No. 8). Taylor moved for reconsideration of this decision, which was denied. (Mem. & Order, ECF No. 11). It is on this record that the latest motions were submitted for decision.

## Legal Standards

I. <u>Motion for Reconsideration</u>

"A motion for reconsideration should be granted only when the [party seeking reconsideration] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel*

---

[5] Taylor sent letters, dated September 9 and 18, 2013 to both the Prisoners Rights Project ("PRP") and Board of Corrections ("BOC") (re: social services, grievance services, and legal mail), an October 22, 2013 letter to PRP (re: unanswered grievances), letters dated October 8, 2013, November 10 and 16, 2013, and January 20, 2014 to Commissioner Schriro (re: lockdown, clothing, religious services, social services, grievance services, and law library), a November 9, 2013 letter to Warden Wettingstein [sic] (re: social services, grievance services, law library, and lockdown); November 16, 2013 and December 9, 2013 letters to mailroom staff about legal mail; a December 12, 2013 letter addressed to both the Board of Corrections ("BOC") and PRP; and a February 13, 2014 letter to CORC about there being no response to his grievances "for a month or more." (Pl. Mem. Ex. A at 9, 16, 18, Ex. B at 24-32).

*Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). Applying this rule of thumb, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Under Local Civil Rule 6.3, furthermore, a motion for reconsideration must be served within 14 days of the entry of the disputed order. *See* E.D.N.Y. Local Civ. R. 6.3.

II. <u>Motion to Dismiss</u>

Often, on dismissal motions, the central issue is the sufficiency of the complaint's pleading. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Prior to filing a responsive pleading, a defendant may move to dismiss a complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), where the complaint the motion attacks fails to do so.

When considering a 12(b)(6) motion, the district court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor." *In re Thelen LLP*, 736 F.3d 213, 218 (2d Cir. 2013). Keeping in mind, at the same time, that, although a *pro se* plaintiff is still required to abide by the Federal Rules of Civil Procedure, on a motion to dismiss, a *pro se* complaint "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)); *see Radin v. Tun*, No. 12 Civ. 1393 (ARR) (VMS), 2015 WL 4645255, at *5 (E.D.N.Y. Aug. 4, 2015). Nevertheless,

courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555.

On a motion to dismiss, the district court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). In addition, the motion court "may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). Though, in the context of self-represented litigants, these considerations are, generally, leavened by the understanding that courts will not dismiss a *pro se* complaint without providing leave to amend at least once unless "it is 'beyond doubt that the plaintiff can provide no set of facts in support' of his amended claims." *Harrison v. New York*, 95 F. Supp. 3d 293, 331 (E.D.N.Y. 2015) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999)).

## Discussion

I. <u>Plaintiff's Second Motion for Reconsideration</u>

Taylor's second motion for reconsideration is time-barred, as he mailed his motion on June 29, 2015, five months after the entry of the order he challenges, and nearly three months after the adverse decision on the first motion for reconsideration. (Pl. Mot. at 2, ECF No. 30). In any event, with one exception futile for other reasons,[6] Taylor merely rehashes the claims raised

---

[6] Taylor provides additional information about the personal involvement of dismissed defendants Parole Chairman Stanford and Senior Parole Officer B. Crome, whom he alleges were required to review the parole revocation appeal he had filed, and who "signed off and affirmed the charges [despite a] lack of evidence." (Pl. Mot. at 2, ECF No. 30). This claim is puzzling, as Taylor admits he pled guilty to two counts of disorderly conduct (Compl. ¶ 1), but, putting aside the fact that he pled guilty, in New York, "[p]arole may be revoked even though there has been an acquittal or dismissal of criminal charges." *Reed v. State*, 78 N.Y.2d 1, 8, 574 N.E.2d 433 (1991). Furthermore, parole board officials are entitled to absolute immunity in their quasi-judicial functions related to the revocation of parole. *See Victory v. Pataki*, No. 13-3592-CV,

7

in his complaint and first motion for reconsideration. His second motion should, therefore, ordinarily result in denial of the motion.

However, a point raised by Taylor proves more troubling. On further review of his complaint, the Court finds he did raise specific allegations against C.O. Kelly, who was dismissed from this action for lack of any direct or personal involvement. This is significant because a district court has the authority to revise its pre final judgment orders "at any time before the entry of a judgment." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 212 (2d Cir. 2010) (quoting Fed. R. Civ. P. 54(b)). As a consequence, the January 28, 2015 order is vacated and revised to the extent that the claims against C.O. Kelly are reinstated. They will now be considered on other grounds below. The balance of the original order is reinstated with the same full force and effect.

II.     The Instant Motion to Dismiss

Defendants move for dismissal of the complaint for failure to exhaust administrative remedies, or, in the alternative, for failure to state any constitutional violation. (Def. Mem., ECF No. 35). Taylor responds that he has met his burden under § 1983. (Pl. Mem., ECF No. 33).[7]

The Prison Reform Litigation Act ("PRLA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. "PLRA's exhaustion requirement

---

2016 WL 373792, at *3 (2d Cir. Feb. 1, 2016); *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). "Parole officers also receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature." *Victory*, 2016 WL 373869, at *12 (quoting *Scotto v. Almenas*, 143 F.3d 105, 112 (2d Cir. 1998)). Thus, any claim based on the new facts alleged by Taylor would be futile on immunity grounds.

[7] For reasons not fathomable, plaintiff styles his opposition as a "traverse motion."

8

applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 992, 152 L. Ed. 2d 12 (2002). Administrative exhaustion is "a pleading requirement rather than an affirmative defense," and, while a plaintiff need not plead that he has exhausted his administrative remedies, "that is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215-16, 127 S. Ct. 910, 921, 166 L. Ed. 2d 798 (2007). Consequently, a court may dismiss a complaint "if it pleads facts demonstrating that administrative remedies were *not* exhausted." *Khudan v. Lee*, No. 12 Civ. 8147 (RJS), 2015 WL 5544316, at *4 (S.D.N.Y. Sept. 17, 2015) (quoting *Garvin v. Rivera*, No. 13 Civ. 7054 (RJS), 2015 WL 876464, at *2 (S.D.N.Y. Feb. 28, 2015)).

A prisoner's administrative remedies "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. As relevant to this case, it is noted that DOC established the Inmate Grievance and Request Program ("IGRP").[8] IGRP applies to, *inter alia*, grievances concerning clothing, correspondence and mail, housing, laundry, social services, the law library, personal hygiene, phone use, property, and the practice of religion. IGRP, App'x A. It outlines a four-level process that begins with a prisoner submitting an IGRP Statement form within 10 business days of the event or issue being grieved. IGRP at IV.D.1.-3. Should the grievance not be resolved at that level, the prisoner may appeal the adverse result to the Inmate Grievance Resolution Committee ("IGRC"), then to the facility's commanding officer, and,

---

[8] Courts in this circuit "regularly" take judicial notice of IGRP, which is publicly available at http://www.nyc.gov/html/doc/downloads/pdf/Directive_3376_Inmate_Grievance_Request_Progr am.pdf. *Seabrook v. City of New York*, No. 13 Civ. 6620 (JPO), 2014 WL 7176052, at *3 n.4 (S.D.N.Y. Dec. 16, 2014); *see Garvin v. Rivera*, No. 13 Civ. 7054 (RJS), 2015 WL 876464, at *3 (S.D.N.Y. Feb. 28, 2015).

finally, to CORC, whose decision concludes the administrative process. *Id.* at II, IV.[9] The prisoner has five days to appeal each unfavorable decision up the ladder. *Id.* Grievances concerning religious practices, however, are referred first to the administrative chaplain and then reviewed by the Committee on Religious Accommodations. *Id.* at II.H, VI.A. Most importantly for the present motion, "at any stage of the IGRP process," if the prisoner does not receive a timely response, he must, within ten business days of the date that response was due, submit an IGRP Disposition form or IGRP Statement form requesting "an appeal to the next stage of the process." *Id.* IV.D.10.

It is the defense contention that Taylor failed to exhaust all of the administrative remedies available through IGRP. At minimum, certainly, the complaint is unclear on this point, referring vaguely to "several" efforts plaintiff took towards appeal, without identifying those efforts. (Compl. at 15). He has now supplemented his complaint with the grievances has attached various letters to his opposition. The supplementation is significant because, although motions to dismiss are generally limited to the pleadings, courts, as noted earlier, may consider factual allegations raised in a *pro se* plaintiff's opposition papers, without converting the motion to one for summary judgment. *See Walker*, 717 F.3d at 122 n.1; *Mayes v. N.Y.C. Police Dep't*, No. 10 Civ. 1690 (JSR) (JLC), 2011 WL 2206739, at *3 (S.D.N.Y. June 6, 2011), *R. & R. adopted*, No.

---

[9] At the first step, an informal resolution will be provided by IGRP staff within five business days. IRGP II.F, IV.G.1. The prisoner may appeal that decision within five business days and request a formal hearing before IGRC. *Id.* at II.G, IV.5.b. That committee, in turn, must conduct its hearing and render a decision within five business days. *Id.* at IV.H.1. IGRC's decision may be appealed, within five business days, to the commanding officer, who must render a decision within six business days, which includes a day for the grievance to be delivered to him or her. *Id.* at IV.H.4.b, IV.I.1-2. An appeal of the commanding officer's decision to CORC must also be made within five business days, and CORC's decision is issued in approximately 19 to 40 business days, including the time allotted for delivery and other processes. *Id.* at IV.I.2.b, IV.J.

10 Civ. 1690 (JSR), 2011 WL 3743309 (S.D.N.Y. Aug. 23, 2011). And, Taylor's supplementation shall be so considered.

Taylor's numerous grievances and letters demonstrate that he made many attempts to be heard, but he did so in a piecemeal fashion that did not exhaust his administrative remedies, even though he sometimes noted the failure of correction officials to respond and his frequent requests for an investigation. Yet, it also appears that he did not timely file the appropriate forms to appeal any one of his several grievances through each of the four grievance stages.

Taylor argues that his failure to exhaust should, nonetheless, be excused because "jail officials did everything in their power to inhibit [him] [] in the grievance process by simply never responding to any of the grievances filed . . . ." (Pl. Mem. 3). Importantly, where "the defendants' own actions prevent a prisoner from pursuing administrative remedies, the prisoner's failure to avail himself of those remedies cannot bar his access to the courts." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 178 (2d Cir. 2006). In this case, given the prevailing grievance framework, defendants' silence did not prevent Taylor from pursuing his remedies. IGRP specifically contemplates that prison officials may fail to respond to grievances. Courts in this circuit routinely find a failure to exhaust where a prisoner fails to complete the IGRP process after receiving no response. *See, e.g., Johnson v. Stevens*, No. 12 Civ. 5186 (RRM) (MDG), 2014 WL 4722711, at *2 (E.D.N.Y. Sept. 22, 2014); *Rivera v. Anna M. Kross Ctr.*, No. 10 Civ. 8696 (RJH), 2012 WL 383941, at *5 (S.D.N.Y. Feb. 7, 2012). As these cases point out, the grievance procedures provided a specific remedy to grieve the failure of grievance officials to respond to a prisoner's grievance. Taylor's exhaustion roadblock stems from his failure to avail himself of and exhaust *that* remedy.

At the same time, dismissal on the strength of this pleading deficiency is not appropriate at this time because it is not apparent that Taylor was ever made aware of how to appeal when prison officials proved nonresponsive. "[A]n administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." *Butler v. Viscusi*, No. 11 Civ. 4844 (JFB) (WDW), 2014 WL 1407262, at *7 (E.D.N.Y. Apr. 11, 2014) (quoting *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011)); *see Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). IGRP states that prisoners will be informed of its procedures "through the Inmate Handbook, posters displayed in congregate areas, and new-admission orientation." IGRP, II.D. Neither the pleadings nor the motion papers state whether such notice occurred. Though Taylor has submitted the instructions printed on the back of his grievance forms, the instructions only explain how to appeal unfavorable decisions, and lack an explanation of how to exhaust remedies when no decision issues. (Pl. Mem. Ex. B at 11, 13, ECF No. 33-2; *see* IGRP, IV.D.10.a, Attachment B). Presumably, defendants have documents or materials that complete the instructions that the documents Taylor has submitted begin to tell. But, it cannot simply be assumed the missing instructions are present in the inmate handbook, or even that Taylor received a handbook, as the documents he attached to his opposition papers might suggest.

In similar situations, courts have found it prudent to order limited discovery on whether the prisoner's failure to exhaust may be excused. *See, e.g., Khudan*, 2015 WL 5544316, at *5 (where there was no response to the plaintiff's grievance, ordering limited, expedited discovery on whether the failure to exhaust was excused). Following such limited discovery or at summary judgment, after an opportunity for discovery, a plaintiff's failure to assert "that he was unaware of the grievance procedures," may warrant dismissal. *Ruggiero*, 467 F.3d at 178. With these

guideposts in place, limited discovery on the issue of exhaustion is appropriate and is ordered. The motion to dismiss on the ground of failure to exhaust administrative remedies as required by PLRA is denied without prejudice and with leave to renew upon the conclusion of the limited discovery now ordered.[10]

## Conclusion

For the reasons set forth above, the motion to dismiss is denied without prejudice and with leave to renew. Plaintiff's second motion for reconsideration is denied, but the January 28, 2015 order is vacated and revised to the extent that the claims against C.O. Kelly are reinstated. As revised, that order is re-instated in full force and effect.

This matter is respectfully referred to Magistrate Judge Robert M. Levy for the purpose of supervising the conduct of limited discovery as to administrative exhaustion.

So Ordered.

Dated: Brooklyn, New York
August 25, 2016

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO
United States District Judge

---

[10] Defendants also attack Taylor's claims on substantive grounds. PLRA's exhaustion requirement is in the nature of a doorkeeping function to bar substantive judicial consideration of a prisoner's claims until the exhaustion hurdle is vaulted. Consideration of the substantive aspects of the Rule 12 motion is deferred, as a result, and that portion of the motion is also denied without prejudice and with leave to renew following the conclusion of limited discovery.

13