UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- x

ROY TAYLOR,

                                                   Plaintiff,

               -against-

OBCC-GRIEVANCE COORDINATOR KENNEDY, OBCC
C.O. SMITH, OBCC CAPT ELAM, OBCC WARDEN
WETTINGTON, SOCIAL SERVICE COUNSELORS
BERRY and HAKIM, OBCC CLOTHES BOX C.O. ELLIS,
OBCC C.O. CRUZ, EMTC C.O. DUNSON, SOCIAL
SERVICE COUNSELORS MR. MOORE and DENTRY,
COORDINATOR MULVANNY, and EMTC CLOTHES
BOX C.O. SCIPION,

                                                 Defendants.
------------------------------------------------------------------------------- x

14-CV-4708 (ENV) (ST)

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

        Defendants New York City Department of Correction ("DOC") counselors Warren Berry and Carol Hakim, Correction Officer Dunson, Captain Elam, and Correction Officer Ellis (collectively, "Defendants") submit this statement of material facts as to which they claim there is no genuine issue to be tried, pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

**A.    DOC's Inmate Grievance and Request Program**

        1.    DOC has an administrative grievance procedure known as the Inmate Grievance and Request Program ("IGRP"). *See* accompanying affidavit of Kimberley Johnson, dated October 12, 2017 ("Johnson Decl."), at ¶ 6 and Exhibit A.

        2.    DOC provides information to all inmates regarding the IGRP through, among other things, the Inmate Handbook. *Id.* at ¶ 7.

3. Under the IGRP, any inmate who is directly affected by an issue, condition, practice, or action relating to the inmate's confinement must file a grievance or request with IGRP staff and proceed through three stages of appeal before filing a lawsuit regarding the issue, condition, practice, or action. Johnson Decl. at ¶ 8.

4. To file a grievance or request, an inmate must fill out a form called the IGRP Statement Form and deposit the form into a "grievance and request box" in his facility, personally deliver the form to the IGRP Office, or give the form to IGRP staff. *Id.* at ¶ 9.

5. Once an inmate files a completed IGRP Statement Form, IGRP staff must provide the inmate with a receipt of filing within two business days of receipt of the form. *Id.* at ¶ 10. If an inmate does not receive a receipt for the grievance, the inmate must re-submit the grievance or request. *Id*.

6. Upon receipt of a grievance or request, IGRP staff must within 5 business days (i) investigate the grievance or request and propose an informal resolution, (ii) dismiss and close the grievance or request, or (iii) refer the submission to another entity for resolution. *Id.* at ¶ 11.

7. If IGRP staff investigates the grievance or request, they must document the investigation using a form called the IGRP Investigation Form. *Id.* at ¶ 12.

8. If IGRP staff proposes an informal resolution, they must enter the proposed resolution on a form called the IGRP Disposition Form. *Id.* at ¶ 13.

9. If IGRP staff dismisses or closes a grievance, they must also document the reasons for dismissal or closing on the IGRP Disposition Form. *Id.* at ¶ 14.

10. If an inmate does not accept the informal resolution proposed by IGRP staff or does not receive a timely disposition, the inmate must next request a formal hearing before the Inmate Grievance Resolution Committee ("IGRC"). Johnson Decl. at ¶¶ 15, 22. Within 5 business days of an inmate's request for a hearing, the IGRC must conduct the hearing, indicate its disposition on the IGRP Disposition Form, and deliver the form to the inmate. *Id*. at ¶ 16.

11. If an inmate does not accept the resolution proposed by the IGRC or does not receive a timely disposition, the inmate must request to appeal to the commanding officer. *Id.* at ¶¶ 17, 22.

12. Upon receiving the inmate's request for an appeal, IGRP staff must forward the IGRP Statement Form and other relevant documentation to the office of the commanding officer. *Id.* at ¶ 17.

13. Within 5 business days of receiving the inmate's appeal documents, the commanding officer must indicate his or her disposition on the IGRP Commanding Officer's Disposition Form and provide the document to IGRP staff, who must then deliver it to the inmate. *Id.* at ¶ 18.

14. If an inmate does not accept the resolution proposed by the commanding officer or does not receive a timely disposition, the inmate must request to appeal to the Central Office Review Committee ("CORC"). *Id.* at ¶ 19, 22.

15. Upon receiving the inmate's request for an appeal, IGRP staff must forward the IGRP Statement Form and other relevant documentation to the IGRP's Executive Director, who shall then forward the documents to each member of CORC and to the Executive Director of the New York City Board of Correction. *Id.* at ¶ 19.

16. Within 10 business days of receiving the inmate's appeal documents (or 15 business days, depending on certain circumstances), CORC must indicate its disposition on CORC's Disposition Form and send it to the inmate. Johnson Decl. at ¶ 20.

17. CORC's disposition constitutes the final decision on the inmate's grievance or request. *Id.* at ¶ 21.

**B.     Plaintiff's Grievance History Regarding Claims in his Complaint**

18. Plaintiff commenced the present action by Complaint filed on August 6, 2014, challenging the conditions of his confinement at Rikers Island between August 10, 2013 and March 28, 2014 (the "Relevant Period"). *See* Complaint, Docket No. 1. The administrative remedial process available to Plaintiff at the time of the alleged incidents was DOC's IGRP. Johnson Decl. at ¶ 6.

**1.     Lockdown**

19. Plaintiff alleges that while he was housed at Otis Bantum Correctional Center ("OBCC"), OBCC Warden Wettington ordered a month-long lockdown of Plaintiff's entire housing unit due to a violent incident involving 5 or more inmates from rival gangs. *See* Complaint at ¶¶ 3, 11.

20. According to DOC's movement history log, the lockdown occurred from October 11, 2013 to November 13, 2013. *See* accompanying Declaration of Agnetha E. Jacob, dated October 13, 2017 ("Jacob Decl."), Exhibit F.

21. During the lockdown, Plaintiff and other inmates were required to wear brown jumpsuits and turn over all personal property. *See* Complaint at ¶¶ 3, 5.

22. They were further allegedly required to be escorted everywhere. *Id.* at ¶ 4.

23. As only one correction officer was allegedly tasked with escorting the inmates, Plaintiff claims he and other inmates in his unit were "often[] times" unable to go to the

law library and that when they were escorted to the library, they were placed in a separate room that had inferior resources. *Id.* at ¶ 12.

24. Plaintiff further claims that, during the lockdown, OBCC Captain Elam and OBCC Officers Cruz and Smith "took part in denying [Muslim religious] services to [him] by never calling the units where [he] resided each Friday." *See* Complaint at ¶¶ 3-4.

25. Plaintiff filed two grievances in October 2013 complaining about his inclusion in the lockdown, the confiscation of his personal property, and the denial of social and legal aid services to him during the lockdown. *See* Johnson Decl., Exhibit B at Taylor 087 and Taylor 089. *See also* Docket No. 33-3 at 1 (Page ID# 246) and 6 (Page ID# 251).

26. Plaintiff did not receive a response from IGRP staff regarding either grievance and did not appeal them to the IGRC. *See* Johnson Decl., Exhibit B.

27. When questioned about the grievances during his deposition, Plaintiff stated that when he did not receive a response from IGRP staff, he "sent them to the commissioner." Jacob Decl., Exhibit E at 39:5-24, 40:12-24, 46:4-22. Plaintiff further testified that he "may" have received a hearing after complaining to the Commissioner about the grievance dated October 23, 2013, but stated that he does not recall what happened after the hearing. *Id.*, Exhibit E at 46:4-24.

28. Plaintiff also filed a grievance, dated November 20, 2013, complaining about the lack of supplies in the law library. *See* Johnson Decl., Exhibit B at Taylor 020.

29. IGRP staff investigated the grievance and issued a disposition with an informal resolution on or about November 22, 2017. *Id.,* Exhibit B at Taylor 021-023.

30. Plaintiff accepted the resolution and signed the disposition form; he did not appeal the disposition to the IGRC. *Id.,* Exhibit B at Taylor 022.

31. When questioned about the grievances during his deposition, Plaintiff stated that he did not recall taking any steps to appeal the disposition after accepting the resolution. Jacob Decl., Exhibit E at 31:15-32:12.

32. DOC did not receive any grievances from Plaintiff during the Relevant Period regarding the alleged denial of religious services during the lockdown. *See* Johnson Decl., Exhibit B.

### 2. Clothing and Bedding

33. Plaintiff alleges that he was "subject to go months without a change of clothes" because staff at OBCC and Eric M. Taylor Center ("EMTC") refused to clean or exchange his jumpsuit; did not provide him with "coats, boots, thermals, underwear, top & bottom, socks and caps or gloves" during the winter of 2013, when temperatures dipped below zero; that EMTC staff did not provide him with a winter blanket because none were apparently available; and that he contracted a "serious cold" from a "dirty and contaminated" blanket he took from the bed of a transferred inmate. *See* Complaint at ¶¶ 5-7.

34. Plaintiff filed one grievance regarding the lack of "thermals" in October 2013 during the lockdown. *See* Johnson Decl., Exhibit B at Taylor 087. *See also* Docket No. 33-3 at 1 (Page ID# 246).

35. He did not receive a response from IGRP staff and did not appeal to the IGRC. *See* Johnson Decl., Exhibit B.

36. When questioned about the grievances during his deposition, Plaintiff stated that after receiving no response from IGRP staff, he sent the grievance directly to the DOC Commissioner. Jacob Decl., Exhibit E at 39:5-24, 40:12-24,

37. DOC did not receive any other grievances from Plaintiff during the Relevant Period regarding clothing. *See* Johnson Decl., Exhibit B.

### 3. Outgoing Mail

38. Plaintiff alleges that some of his letters, including legal letters, were never mailed because the facilities did not have enough postage stamps for indigent inmates; that three letters were mailed without sufficient postage on them; that staff inappropriately placed "return to sender" or "wrong address" on some of his envelopes; and that an EMTC correction officer refused to mail 5 pieces of legal mail because Plaintiff was allegedly "sending too much legal mail out." *See* Complaint at ¶ 13-14.

39. Plaintiff filed four grievances regarding the treatment of his mail. Johnson Decl., Exhibit B at Taylor 012, Taylor 016, Taylor 085, and Taylor 088.

40. In a grievance dated September 25, 2013, Plaintiff complained that mail for indigent inmates, including him, had not gone out for nearly one month. *Id.*, Exhibit B at Taylor 016.

41. IGRP staff investigated the grievance and issued a disposition with an informal resolution on or about October 1, 2013. *Id.*, Exhibit B at Taylor 017-19.

42. Plaintiff did not appeal the disposition to the IGRC. *See id.*, Exhibit B.

43. When asked about the grievance during his deposition, Plaintiff testified that he does not recall receiving the disposition form. Jacob Decl., Exhibit E at 30:17-31:9.

44. He further testified that after receiving no response from IGRP staff, he sent the grievance directly to the DOC Commissioner. *Id.*, Exhibit E at 31:10-14.

45. Plaintiff then filed two additional grievances, both dated October 1, 2013, claiming that staff "refused to mail" or "place postage" on his legal mail. *See* Johnson Decl., Exhibit B at Taylor 085 and Taylor 088. *See also* Docket No. 33-3 at 3 (Page ID# 248) and 4 (Page ID# 249).

46. IGRP staff did not respond to these grievances, and Plaintiff did not appeal to the IGRC. *See* Johnson Decl., Exhibit B.

47. When asked about the grievances at his deposition, Plaintiff stated that after receiving no response from IGRP staff, he sent the grievances directly to the DOC Commissioner. Jacob Decl., Exhibit E at 40:25-41:21; 43:19-44:16.

48. In a grievance dated November 21, 2013, Plaintiff complained that legal mail had been returned him due to insufficient postage. *See* Johnson Decl., Exhibit B at Taylor 012.

49. IGRP staff investigated the grievance and issued a disposition with an informal resolution on or about November 25, 2013. *Id.*, Exhibit B at Taylor 013-15.

50. Plaintiff did not appeal the disposition to the IGRC. *See* Johnson Decl., Exhibit B.

51. When asked about the grievance during his deposition, Plaintiff testified that he does not recall receiving the disposition form. Jacob Decl., Exhibit E at 26:7-27:23.

52. He further testified that after receiving no response from IGRP staff, he sent the grievance directly to the DOC Commissioner. *Id.*, Exhibit E at 29:20-30:1.

53. Plaintiff said he wrote directly to the DOC Commissioner because writing to the Commissioner was "the most effective way" to get a hearing regarding a grievance. *Id.*, Exhibit E at 30:6-16.

54. DOC did not receive any other grievances from Plaintiff during the Relevant Period regarding outgoing mail. *See* Johnson Decl., Exhibit B.

**4. Access to Social Services and IGRP**

55. Plaintiff alleges that OBCC counselors Hakim and Berry and EMTC counselors Moore and Gentry refused to help him contact state and federal courts or obtain his personal property from a transitional house, and that OBCC grievance coordinator Kennedy and EMTC grievance coordinator Mulvanny failed to answer or address any of his grievances. *See* Complaint at ¶¶ 9-10.

56. In a grievance dated August 20, 2013, Plaintiff complained that he had yet to receive legal aid and social services. *See* Johnson Decl., Exhibit B at Taylor 027.

57. IGRP staff investigated the grievance and issued a disposition with an informal resolution on or about August 23, 2017. *Id.*, Exhibit B at Taylor 028-30. Specifically, IGRP forwarded Plaintiff's name to social services and legal aid for further assistance. *Id.*, Exhibit B at Taylor 029.

58. Plaintiff accepted the resolution and signed the disposition form; he did not appeal the disposition to the IGRC. *Id.*, Exhibit B at Taylor 029.

59. When questioned about this grievance, Plaintiff acknowledged accepting the resolution but noted that he believed his specific request to "reprimand staff" in the grievance was not grievable. Jacob Decl., Exhibit E at 32:13-36:10. Plaintiff could not recall when he learned that the issue was not grievable but stated that he did not know it was not grievable when he in fact accepted the resolution. *Id.*, Exhibit E at 36:13-23.

60. In a grievance dated October 1, 2013, Plaintiff complained about not receiving responses to various grievances he had filed about the law library, social services, and mail. *See* Johnson Decl., Exhibit B at Taylor 088. *See also* Docket No. 33-3 at 4 (Page ID# 249).

61. IGRP staff did not respond to the grievance, and Plaintiff did not appeal to the IGRC. *See* Johnson Decl., Exhibit B.

62. When asked about this grievance at his deposition, Plaintiff stated that after receiving no response from IGRP staff, he sent the grievance directly to the DOC Commissioner. Jacob Decl., Exhibit E at 43:19-44:16.

63. DOC received a copy of the letter Plaintiff sent to then-DOC Commissioner Dora Schiro, dated October 23, 2013, requesting an investigation into the lack of responses to his grievances. Johnson Decl., Exhibit B at Taylor 092.

**C.     Plaintiff's Knowledge of the Inmate Grievance and Request Program**

64. Upon admission to OBCC in August 2013, Plaintiff signed an inmate intake card acknowledging his receipt of a copy of the Inmate Handbook, which contains a copy of the IGRP. *See* Jacob Decl., Exhibit G.

65. During his deposition, Plaintiff stated that he could not recall whether he in fact received the Inmate Handbook. *Id.*, Exhibit E at 9:18-23.

66. Plaintiff testified, however, that he is nonetheless "quite familiar" with the IGRP because he reviewed DOC's grievance procedures in 2013 on kiosk computers at the law library. *Id.*, Exhibit E at 10:23-11:3.

67. According to Plaintiff, inmates can "get access on [DOC's] kiosk computers" to "anything [they] want to know about the grievance procedures." *Id.*, Exhibit E at 11:1-3. He further explained that an inmate can "pull up […] the whole grievance procedure" on the computer. *Id.*, Exhibit E at 13:20-25.

68. Plaintiff said he routinely reviewed the IGRP procedures before filing a grievance. Jacob Decl., Exhibit E at 11:10-16.

69. Plaintiff also explained each of the four steps in the procedure. *Id.*, Exhibit E at 12:3-13:16.

70. Plaintiff claimed, however, that exhausting his remedies was "difficult" because "a lot of times" he did not receive responses to his grievances. *Id.*, Exhibit E at 12:5-15.

71. He said he "deemed" the IGRP appeals process "unavailable" due to the lack of responses to his grievances. *Id.*, Exhibit E at 12:18-23.

72. Plaintiff stated that he would not appeal IGRP staff's disposition or non-response by requesting a hearing before the IGRC because the IGRC is part of the same office that "originally never responded" to his grievance. *Id.*, Exhibit E at 15:4-13.

73. Plaintiff further testified he would not appeal a disposition or non-response to commanding officers because, in his experience, they also "don't respond" "[a] lot of times." *Id.*, Exhibit E at 15:14-20.

74. Plaintiff stated that, as a result of the lack of responses, if he did not receive a response to a grievance, he would appeal directly to the DOC Commissioner because the Commissioner is the "watchdog" and "superior[]" of IGRP staff, commanding officers and CORC, and could accordingly compel those individuals and entities to respond to his grievances. *Id.*, Exhibit E at 15:16-20; 16:23-25.

11

Dated:   New York, NY
        October 13, 2017

                ZACHARY W. CARTER
                Corporation Counsel of the
                  City of New York
                *Attorney for Defendants Berry, Hakim,*
                *Dunson, Elam, and Ellis*
                100 Church Street
                New York, NY 10007
                Tel: (212) 356-0881

                By:  /s/ Agnetha E. Jacob
                      Agnetha E. Jacob
                      Assistant Corporation Counsel

To:    Roy Taylor
        B/C 3491708184
        Metropolitan Detention Center-Brooklyn
        125 White Street
        New York, NY 10013