Index No.  14-CV-4708 (ENV) (ST)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROY TAYLOR,

                                         Plaintiff,

-against-

OBCC-GRIEVANCE COORDINATOR KENNEDY, OBCC C.O. SMITH, OBCC CAPT ELAM, OBCC WARDEN WETTINGTON, SOCIAL SERVICE COUNSELORS BERRY and HAKIM, OBCC CLOTHES BOX C.O. ELLIS, OBCC C.O. CRUZ, EMTC C.O. DUNSON, SOCIAL SERVICE COUNSELORS MR. MOORE and DENTRY, COORDINATOR MULVANNY, and EMTC CLOTHES BOX C.O. SCIPION,

                                           Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

ZACHARY W. CARTER
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007
*Attorney for Defendants Berry, Hakim, Dunson, Elam, and Ellis*

Of Counsel: Agnetha E. Jacob
Tel: (212) 356-0881
Fax: (212) 356-8760

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................ 1

STATEMENT OF FACTS ................................................................................................................ 1

    A.    DOC's Inmate Grievance and Request Program ................................................................ 1

    B.    Plaintiff's Grievance History Regarding Claims in his Complaint ..................................... 3

        1.    Claims Regarding Lockdown .................................................................................. 3

        2.    Claims Regarding Clothing and Bedding ............................................................... 4

        3.    Claims Regarding Outgoing Mail ........................................................................... 5

        4.    Claims Regarding Access to Social Services and IGRP ........................................ 6

    C.    Plaintiff's Knowledge of the Inmate Grievance and Request Program .............................. 6

    D.    Defendants' Motion to Dismiss the Complaint for Failure to Exhaust ............................. 7

ARGUMENT .................................................................................................................................... 8

LEGAL STANDARD....................................................................................................................... 8

    POINT I ..................................................................................................................................... 9

        PLAINTIFF'S ACTION SHOULD BE DISMISSED FOR FAILURE TO EXHAUST HIS
        ADMINISTRATIVE REMEDIES ....................................................................................... 9

CONCLUSION............................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................................ 8

*Angulo v. Nassau Cty.*,
    89 F. Supp. 3d 541 (E.D.N.Y. 2015) ...................................................................................... 10

*Burgos v. Hopkins*,
    14 F.3d 787 (2d Cir. 1994) ...................................................................................................... 8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................................. 8, 9

*Espinal v. Goord*,
    558 F.3d 119 (2d Cir. 2009) .................................................................................................. 10

*Garvin v. Rivera*,
    13-CV-7054, 2015 U.S. Dist. LEXIS 24616 (S.D.N.Y. Feb. 28, 2015) ................................. 11

*George v. Morrisson*,
    06-CV-3188, 2007 U.S. Dist. LEXIS 42640 (S.D.N.Y. June 4, 2007) .................................. 10

*Giano v. Goord*,
    380 F.3d 670 (2d Cir. 2004) .................................................................................................. 14

*Hemphill v. New York*,
    380 F.3d 680 (2d Cir. 2004) .................................................................................................. 11

*Hill v. Curcione*,
    657 F.3d 116 (2d Cir. 2011) .................................................................................................... 9

*Johnson v. Stevens*,
    12-CV-5186, 2014 U.S. Dist. LEXIS 133164 (E.D.N.Y. Sept. 22, 2014) ............................. 10

*Kasiem v. Switz*,
    756 F. Supp. 2d 570 (S.D.N.Y. 2010) .................................................................................... 11

*Macias v. Zenk*,
    495 F.3d 37 (2d Cir. 2007) .................................................................................................... 13

*Malik v. City of N.Y.*,
    11-CV-6062, 2012 U.S. Dist. LEXIS 118358 (S.D.N.Y. Aug. 15, 2012),
    *adopted by* 2012 U.S. Dist. LEXIS 141305 (S.D.N.Y., Sept. 28, 2012) ......................... 12, 13

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................................................... 9

*Odom v. Keane*,
  95-CV-9941, 1997 U.S. Dist. LEXIS 14077 (S.D.N.Y. Sept. 15, 1997) ................................. 8

*Pierre-Louis v. Martinez*,
  12-CV-2240, 2014 U.S. Dist. LEXIS 115236 (E.D.N.Y. Aug. 18, 2014) .............................. 11

*Porter v. Nussle*,
  534 U.S. 516 (2002) ............................................................................................... 9, 14

*Ricci v. DeStefano*,
  557 U.S. 557 (2009) ................................................................................................ 8, 9

*Riles v. Buchanan*,
  656 F. App'x 577 (2d Cir. 2016) ................................................................................... 10

*Scott v. Harris*,
  550 U.S. 372 (2007) ..................................................................................................... 9

*Shariff v. Coombe*,
  655 F. Supp. 2d 274 (S.D.N.Y. 2009) ...................................................................... 11, 12

*Smith v. City of N.Y.*,
  12-CV-3303, 2013 U.S. Dist. LEXIS 144122 (S.D.N.Y. Sep. 26, 2013) .............................. 12

*Taylor v. Kennedy*,
  14-CV-4708, 2016 U.S. Dist. LEXIS 120824 (E.D.N.Y. Aug. 25, 2016) .............................. 10

*Waters v. Schneider*,
  01-CV-5217, 2002 U.S. Dist. LEXIS 7166 (S.D.N.Y. Apr. 17, 2002) .................................. 10

*Weinstock v. Columbia Univ.*,
  224 F.3d 33 (2d Cir. 2000) ............................................................................................ 8

*Woodford v. Ngo*,
  548 U.S. 81 (2006) ................................................................................................ 10, 14

**Statutes**

42 U.S.C. § 1983 ............................................................................................................... 9

42 U.S.C. § 1997e(a) ......................................................................................................... 9

**Rules**

Federal Rule of Civil Procedure 56(a) ................................................................................. 8

**PRELIMINARY STATEMENT**

Plaintiff Roy Taylor brings this action pursuant to 42 U.S.C. § 1983, alleging that various employees of the New York City Department of Correction ("DOC") violated his constitutional rights during his detention on Rikers Island between August 10, 2013 and March 28, 2014. Under the Prison Litigation Reform Act, Plaintiff was required to exhaust his administrative remedies at DOC before filing this suit. The undisputed facts show, however, that Plaintiff failed to do so. Defendants DOC counselors Warren Berry and Carol Hakim, Correction Officer Dunson, Captain Elam, and Correction Officer Ellis (collectively, "Defendants")[1] accordingly respectfully move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment to dismiss Plaintiff's action in its entirety.

**STATEMENT OF FACTS**

Defendants respectfully refer the Court to their Local Rule 56.1 Statement of Material Facts Not in Dispute dated October 13, 2017 ("Defs.' 56.1 Statement") for a complete recitation of the material facts. Below is a summary of those facts.

**A.     DOC's Inmate Grievance and Request Program**

DOC has an administrative grievance procedure known as the Inmate Grievance and Request Program ("IGRP"). Defs.' 56.1 Statement at ¶ 1. DOC provides information to all inmates regarding the IGRP through, among other things, the Inmate Handbook. *Id.* at ¶ 2. Under the IGRP, any inmate who is directly affected by an issue, condition, practice, or action relating to the inmate's confinement must file a grievance or request with IGRP staff and proceed

---

[1]     While this motion is made on behalf of Defendants Berry, Hakim, Dunson, Elam and Ellis, the arguments set forth herein warrant dismissal of the action as against all defendants.

through three stages of appeal before filing a lawsuit regarding the issue, condition, practice, or action.[2] Defs.' 56.1 Statement at ¶ 3. The steps of the IGRP are as follows.

To file a grievance or request, an inmate must fill out a form called the IGRP Statement Form and deposit the form into a "grievance and request box" in his facility, personally deliver the form to the IGRP Office, or give the form to IGRP staff. Defs.' 56.1 Statement at ¶ 4. Upon receipt of a grievance or request, IGRP staff must within 5 business days (i) investigate the grievance or request and propose an informal resolution, (ii) dismiss and close the grievance or request, or (iii) refer the submission to another entity for resolution. *Id.* at ¶ 6. If IGRP staff proposes an informal resolution, they must enter the proposed resolution on a form called the IGRP Disposition Form. *Id.* at ¶ 8.

If an inmate does not accept the resolution proposed by IGRP staff or does not receive a timely disposition, the inmate must next request a formal hearing before the Inmate Grievance Resolution Committee ("IGRC"). *Id.* at ¶ 10. Within 5 business days of an inmate's request for a hearing, the IGRC must conduct the hearing, indicate its disposition on the IGRP Disposition Form, and deliver the form to the inmate. *Id.*

If an inmate does not accept the resolution proposed by the IGRC or does not receive a timely disposition, the inmate must request to appeal to the commanding officer. *Id.* at ¶ 11. Upon receiving the inmate's request for an appeal, IGRP staff must forward the IGRP Statement Form and other relevant documentation to the office of the commanding officer. *Id.* at ¶ 12. Within 5 business days of receiving the inmate's appeal documents, the commanding officer must indicate his or her disposition on a form called the IGRP Commanding Officer's

---

[2] Certain actions, irrelevant to the present action, are not subject to the IGRP; those issues are enumerated in Appendix A to the IGRP.

2

Disposition Form and provide the document to IGRP staff, who must then deliver it to the inmate. Defs.' 56.1 Statement at ¶ 13.

If an inmate does not accept the resolution proposed by the commanding officer or does not receive a timely disposition, the inmate must finally request to appeal to the Central Office Review Committee ("CORC"). *Id.* at ¶ 14. Upon receiving the inmate's request for an appeal, IGRP staff must forward the IGRP Statement Form and other relevant documentation to the IGRP's Executive Director, who shall then forward the documents to each member of CORC. *Id.* at ¶ 15. Within 10 business days of receiving the inmate's appeal documents (or 15 business days, depending on certain circumstances), CORC must indicate its disposition on a form called CORC's Disposition Form and send it to the inmate. *Id.* at ¶ 16. CORC's disposition constitutes the final decision on the inmate's grievance or request. *Id.* at ¶ 17.

B.      **Plaintiff's Grievance History Regarding Claims in his Complaint**

By Complaint filed on August 6, 2014, Plaintiff commenced the present action, challenging the conditions of his confinement at Rikers Island between August 10, 2013 and March 28, 2014 (the "Relevant Period"). *See* Complaint, Docket No. 1. Plaintiff's allegations and grievance history with respect to those allegations are summarized below.

1. **Claims Regarding Lockdown**

Plaintiff alleges that while he was housed at Otis Bantum Correctional Center ("OBCC"), OBCC Warden Wettington ordered a month-long lockdown of Plaintiff's entire housing unit due to a violent incident involving 5 or more inmates from rival gangs. *See* Complaint, at ¶¶ 3, 11.  According to DOC's movement history log, the lockdown occurred from October 11, 2013 to November 13, 2013.  Defs.' 56.1 Statement at ¶ 20. During the lockdown, Plaintiff and other inmates were required to wear brown jumpsuits and turn over all personal property. *See* Complaint at ¶¶ 3, 5. They were further allegedly required to be escorted

3

everywhere. *See* Complaint at ¶ 4. As only one correction officer was allegedly tasked with escorting the inmates, Plaintiff claims he and other inmates in his unit were "often[] times" unable to go to the law library and that when they were escorted to the library, they were placed in a separate room with inferior resources. *Id*. at ¶ 12. Plaintiff further claims that, during the lockdown, OBCC Captain Elam and OBCC Officers Cruz and Smith "took part in denying [Muslim religious] services to [him] by never calling the units where [he] resided each Friday." *Id.* at ¶¶ 3-4.

Plaintiff filed two grievances in October 2013 complaining about his inclusion in the lockdown, the confiscation of his personal property, and the denial of social and legal aid services to him during the lockdown. Defs.' 56.1 Statement at ¶ 25. He did not receive a response from IGRP staff to either grievance and did not appeal them to the IGRC. *Id.* at ¶¶ 26-27. Plaintiff also filed a grievance, dated November 20, 2013, complaining about the lack of supplies in the law library. *Id.* at ¶ 28. IGRP staff investigated the grievance and issued a disposition with an informal resolution on or about November 22, 2017. *Id.* at ¶ 29. Plaintiff accepted the resolution and did not appeal the disposition to the IGRC. *Id.* at ¶¶ 30-31. DOC did not receive any grievances from Plaintiff during the Relevant Period regarding the alleged denial of religious services during the lockdown. *Id.* at ¶ 31.

    **2.    Claims Regarding Clothing and Bedding**

Plaintiff alleges that he was "subject to go months without a change of clothes" because staff at OBCC and Eric M. Taylor Center ("EMTC") refused to clean or exchange his jumpsuit; did not provide him with "coats, boots, thermals, underwear, top & bottom, socks and caps or gloves" during the winter of 2013, when temperatures dipped below zero; that EMTC staff did not provide him with a winter blanket because none were apparently available; and that

4

he contracted a "serious cold" from a "dirty and contaminated" blanket he took from the bed of a transferred inmate. *See* Complaint at ¶¶ 5-7.

Plaintiff filed one grievance regarding the lack of "thermals" in October 2013 during the lockdown. Defs.' 56.1 Statement at ¶ 34. He did not receive a response from IGRP staff and did not appeal to the IGRC. *Id.* at ¶¶ 35-36. DOC did not receive any other grievances from Plaintiff during the Relevant Period regarding clothing. *Id.* at ¶ 37.

### 3. Claims Regarding Outgoing Mail

Plaintiff alleges that some of his letters, including legal letters, were never mailed because the facilities did not have enough postage stamps for indigent inmates; that three letters were mailed without sufficient postage on them; that staff inappropriately placed "return to sender" or "wrong address" on some of his envelopes; and that an EMTC correction officer refused to mail 5 pieces of legal mail because Plaintiff was apparently "sending too much legal mail out." *See* Complaint at ¶ 13-14

Plaintiff filed four grievances regarding the treatment of his mail. Defs.' 56.1 Statement at ¶ 39. In a grievance dated September 25, 2013, Plaintiff complained that mail for indigent inmates, including him, had not gone out for nearly one month. *Id.* at ¶ 40. IGRP staff investigated the grievance and issued a disposition with an informal resolution on or about October 1, 2013. *Id.* at ¶ 41. Plaintiff did not appeal the disposition to the IGRC. *Id.* at ¶¶ 42-44. Plaintiff then filed two additional grievances, both dated October 1, 2013, claiming that staff "refused to mail" or "place postage" on his legal mail. *Id.* at ¶ 45. IGRP staff did not respond to these grievances, and Plaintiff did not appeal them to the IGRC. *Id.* at ¶¶ 46-47. Finally, in a grievance dated November 21, 2013, Plaintiff complained that legal mail had been returned him due to insufficient postage. *Id.* at ¶ 48. IGRP staff investigated the grievance and issued a disposition with an informal resolution on or about November 25, 2013. *Id.* at ¶ 49. Plaintiff did

5

not appeal the disposition to the IGRC. *Id.* at ¶¶ 50-52. DOC did not receive any other grievances from Plaintiff during the Relevant Period regarding outgoing mail. *Id.* at ¶ 54.

### 4. Claims Regarding Access to Social Services and IGRP

Plaintiff alleges that OBCC counselors Hakim and Berry and EMTC counselors Moore and Gentry refused to help him contact state and federal courts or obtain his personal property from a transitional house, and that OBCC grievance coordinator Kennedy and EMTC grievance coordinator Mulvanny failed to answer or address any of his grievances. *See* Complaint at ¶¶ 9-10.

In a grievance dated August 20, 2013, Plaintiff complained that he had yet to receive legal aid and social services. Defs.' 56.1 Statement at ¶ 56. IGRP staff investigated the grievance and issued a disposition with an informal resolution on or about August 23, 2017. *Id.* at ¶ 57. Plaintiff accepted the resolution and did not appeal the disposition to the IGRC. *Id.* at ¶¶ 58-59. In a grievance dated October 1, 2013, Plaintiff complained about not receiving responses to various grievances he had filed about the law library, social services, and mail. *Id.* at ¶ 60. IGRP staff did not respond to the grievance, and Plaintiff did not appeal to the IGRC. *Id.* at ¶¶ 61-62. Instead, Plaintiff wrote a letter to then-DOC Commissioner Dora Schiro, requesting an investigation into the lack of responses to his grievances. *Id.* at ¶ 63.

### C. Plaintiff's Knowledge of the Inmate Grievance and Request Program

Upon admission to OBCC in August 2013, Plaintiff signed an inmate intake card acknowledging his receipt of a copy of the Inmate Handbook, which contains a copy of the IGRP. *Id.* at ¶ 64. During his deposition, Plaintiff stated that he could not recall whether he in fact received the Inmate Handbook upon admission but testified that he is nonetheless "quite familiar" with the IGRP because he routinely reviewed DOC's grievance procedures on kiosk computers at the law library before filing his grievances. *Id.* at ¶¶ 65-68.

6

Plaintiff explained each of the four steps in the procedure but claimed the appeals process was "unavailable" to him because IGRP staff and others were often unresponsive to him. *Id.* at ¶¶ 69-71. Specifically, he stated that he would not appeal IGRP staff's disposition or non-response by requesting a hearing before the IGRC because the IGRC is part of the same office that "originally never responded" to his grievance, and that he would not appeal to commanding officers because, in his experience, they also "don't respond" "[a] lot of times." *Id.* at ¶¶ 72-73. Plaintiff stated that, as a result, if he did not receive a response to a grievance, he would appeal directly to the DOC Commissioner. *Id.* at ¶ 74.

**D.      Defendants' Motion to Dismiss the Complaint for Failure to Exhaust**

By Notice of Motion dated July 29, 2015, Defendants moved to dismiss this action on the grounds that Plaintiff had failed to exhaust his administrative remedies. *See* Docket Nos. 34-35. In his opposition to the motion filed on August 20, 2015, Plaintiff argued that his failure to exhaust should be excused because "jail officials did everything in their power to inhibit [him] [] in the grievance process by simply never responding to any of the grievances filed." *See* Docket No. 33 at 3.

By Order dated September 7, 2016, Judge Vitaliano noted that "defendants' silence did not prevent [Plaintiff] from pursuing his remedies" but nevertheless denied Defendants' motion to dismiss because he concluded that it was "not apparent that [Plaintiff] was ever made aware of how to appeal when prison officials proved nonresponsive." *See* Docket No. 40 at 12. Judge Vitaliano then ordered the parties to conduct limited discovery on the issue of exhaustion. *Id.* The parties completed the limited discovery in July 2017.

7

# ARGUMENT

## LEGAL STANDARD

A party is entitled to summary judgment if the party shows, based on pleadings and materials in the record, that there is "no genuine dispute as to any material fact" and that the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the party moving for summary judgment meets its burden of demonstrating "the absence of a genuine issue of material fact," the nonmoving party must present specific evidence to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmovant cannot merely rely on allegations in his pleading or conclusory allegations to defeat the motion. *Anderson*, 477 U.S. at 248; *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

Where a party is proceeding *pro se*, the court must "'read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest.'" *Odom v. Keane*, 95-CV-9941, 1997 U.S. Dist. LEXIS 14077, at *7-8 (S.D.N.Y. Sept. 15, 1997) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, even "a *pro se* party's bald assertion, completely unsupported by evidence, [will be insufficient] to overcome a motion for summary judgment." *Id.* at *8. (internal quotations omitted).

In deciding a motion for summary judgment, the court must view the facts "'in the light most favorable to the nonmoving party.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, if the "parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could

8

believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A movant must be granted summary judgment (1) if the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,'" *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); or (2) if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. Since one of the principal purposes of summary judgment is to "isolate and dispose of factually unsupported claims," a motion for summary judgment must be construed with "due regard" not only for the rights of plaintiffs to have their claims tried before a jury, but also for the rights of defendants to demonstrate—prior to trial—that a plaintiff's claims have no factual basis. *Celotex*, 477 U.S. at 322, 323-24, 327.

## POINT I

### PLAINTIFF'S ACTION SHOULD BE DISMISSED FOR FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES

This Court should grant Defendants' motion for summary judgment because the undisputed facts show that Plaintiff was aware of the IGRP process but nonetheless failed to exhaust his administrative remedies.

Under the Prison Litigation Reform Act ("PLRA"), an inmate must exhaust all available administrative remedies before bringing a 42 U.S.C. § 1983 action regarding prison conditions. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement "'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes . . . [.]'" *Hill v. Curcione*, 657 F.3d 116, 124 (2d Cir. 2011) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). *See Johnson v. Stevens*, 12-CV-5186, 2014 U.S. Dist. LEXIS 133164, at *1 (E.D.N.Y.

9

Sept. 22, 2014) (inmate alleging violations of constitutional rights during incarceration at Rikers Island subject to PLRA's exhaustion requirement).

The procedure for exhaustion is not defined by the PLRA, but rather by the rules of the facility in which the inmate is incarcerated. *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009). To properly exhaust a claim under the PLRA, an inmate must use "all steps" provided by the correctional facility and comply with its prescribed deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 95 (2006). *See also Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (affirming district court's dismissal of plaintiff's action for failure to exhaust because although plaintiff "made several submissions in his attempt to exhaust his administrative remedies, he failed to properly use all the steps in the facility's grievance program).

Thus, "[w]hen an inmate files a grievance and receives no response, he must nevertheless properly exhaust all appeals before his grievance is considered exhausted." *George v. Morrisson*, 06-CV-3188, 2007 U.S. Dist. LEXIS 42640, at *14-15 (S.D.N.Y. June 4, 2007) (rejecting inmate's claim that he could not be expected to pursue appeals where staff failed to respond to his grievances). *See Taylor v. Kennedy*, 14-CV-4708, 2016 U.S. Dist. LEXIS 120824, at *18 (E.D.N.Y. Aug. 25, 2016) ("Courts in this circuit routinely find a failure to exhaust where a prisoner fails to complete the IGRP process after receiving no response.") (collecting cases); *Angulo v. Nassau Cty.*, 89 F. Supp. 3d 541, 551 (E.D.N.Y. 2015) ("Any failure by [a facility] to respond to [a] grievance (even if it was received) does not excuse plaintiff's failure to exhaust all levels of administrative appeal of those grievances.") (collecting cases); *Waters v. Schneider*, 01-CV-5217, 2002 U.S. Dist. LEXIS 7166, at *5 (S.D.N.Y. Apr. 17, 2002) (dismissing action for failure to exhaust where plaintiff failed to further appeal IGRC's lack of response to his grievance).

A prisoner's failure to exhaust may be excused if a facility's administrative remedies were unavailable to him.[3] *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). To determine whether administrative remedies were unavailable to the inmate, courts look to whether a "similarly situated individual of ordinary firmness" would have deemed the remedies unavailable. *Id.* at 688 (internal quotation marks omitted). Administrative remedies cannot, however, be deemed unavailable where "the record reflects that [an inmate] continued to file grievance after grievance during the period of alleged unavailability." *Kasiem v. Switz*, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010) (collecting cases).

Additionally, a prisoner's "perception" that a facility's grievance program is "ineffective" or "futile" does not excuse a failure to exhaust. *Shariff v. Coombe*, 655 F. Supp. 2d 274, 286 (S.D.N.Y. 2009).

The administrative remedial process available to Plaintiff at the time of the alleged incidents was DOC's IGRP. *See Garvin v. Rivera*, 13-CV-7054, 2015 U.S. Dist. LEXIS 24616, at *6-7 (S.D.N.Y. Feb. 28, 2015); Def.'s 56.1 Statement at ¶ 18. To exhaust his administrative remedies, Plaintiff was accordingly required to file a grievance with IGRP staff and proceed through "all levels" of appeal provided by the IGRP. *Pierre-Louis v. Martinez*, 12-CV-2240, 2014 U.S. Dist. LEXIS 115236, at *9 (E.D.N.Y. Aug. 18, 2014).

---

[3] Failure to exhaust may also be exhausted if defendants forfeited the defense or if their actions estop them from raising the defense, or if special circumstances justify the failure to properly exhaust. *Hemphill*, 380 F.3d at 686. Plaintiff does not, however, claim these exemptions.

11

Plaintiff's action should be dismissed because the deposition testimony and documentary evidence shows that Plaintiff was aware of the IGRP, and indeed filed several initial grievances, but nonetheless failed to exhaust his administrative remedies regarding the allegation in his Complaint.

There is no dispute that Plaintiff was aware of the IGRP. Plaintiff received a copy of the Inmate Handbook containing the IGRP procedures in August 2013. *See Smith v. City of N.Y.*, 12-CV-3303, 2013 U.S. Dist. LEXIS 144122, at *33-35 (S.D.N.Y. Sep. 26, 2013) (finding that plaintiff "indisputably received a copy of the Inmate Handbook" where defendants submitted a copy of an inmate intake card bearing plaintiff's signature acknowledging his receipt of the Inmate Handbook even though plaintiff claimed he did not believe he received the handbook). He is accordingly "charged with familiarity with all steps of the grievance process." *Id.* at *54. Plaintiff also testified that he is familiar with the IGRP because he reviewed the IGRP procedures on computers available at the law library.

There is also no dispute that Plaintiff failed to proceed through all levels of appeal with respect to the 8 grievances he filed regarding the claims in his Complaint. While Plaintiff testified that he did not avail himself of certain steps in the appeals process because he believed appealing to the IGRC and commanding officers was futile, his perception regarding the futility of the process does not excuse his failure to proceed to those levels of appeal. *Shariff*, 655 F. Supp. 2d at 286. *Malik v. City of N.Y.* is instructive. 11-CV-6062, 2012 U.S. Dist. LEXIS 118358 (S.D.N.Y. Aug. 15, 2012), *adopted by* 2012 U.S. Dist. LEXIS 141305 (S.D.N.Y., Sept. 28, 2012). In that case, an inmate within DOC's custody sought "to be excused from the exhaustion requirement because the DOC allegedly never responded to his grievances." *Id.* at *17.

12

The Court in *Malik*, however, rejected the inmate's argument and explained its rationale as follows:

> Under the IGRP, if a prisoner has not received a response to a grievance within five days, the prisoner is required to sign another grievance form requesting a hearing[.] [T]he IGRP places the burden on the prisoner to request a formal hearing when there is no timely response to a grievance. Therefore, under the IGRP, a prisoner who does not receive a response from a grievance within five days but fails to request a hearing is not excused from the requirement of exhaustion, unless prison officials prevented him from requesting the hearing or taking further steps in the IGRP process. […] In the absence of any allegation that [Plaintiff] was misinformed about the applicable procedures or not provided information about them, [Plaintiff's] apparent ignorance of the IGRP procedures applicable after the initial filing of a grievance does not excuse his failure to follow each step.

*Malik,* 2012 U.S. Dist. LEXIS 118358 at *20-21.

Plaintiff here similarly attempts to claim that his failure to exhaust should be excused because DOC staff routinely did not respond to his grievances. Plaintiff cannot, however, be excused on this basis because he was provided with a copy of the IGRP, was aware of DOC's grievance procedures, and was not prevented by staff from advancing through each step of the IGRP process.

As Plaintiff unequivocally failed to exhaust his administrative remedies before filing this lawsuit, this Court should accordingly grant Defendants' motion for summary judgment and dismiss Plaintiff's Complaint in its entirety. *See Macias v. Zenk*, 495 F.3d 37, 41 (2d Cir. 2007) (A "prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction and the benefits of exhaustion can be realized only if the prison grievance system is

13

given a fair opportunity to consider the grievance.") (internal brackets and quotations omitted) (citing *Woodford*, 548 U.S. at 94-95); *Giano v. Goord*, 380 F.3d 670, 677-78 (2d Cir. 2004) (allowing prisoners to bypass administrative procedural rules with impunity would subvert Congress's desire to 'afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case'") (quoting *Porter*, 534 U.S. at 525).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment, dismiss Plaintiff's Complaint in its entirety, and grant them such other and further relief as the Court deems just and proper.

Dated:	New York, NY
	October 13, 2017

ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
*Attorney for Defendants Berry, Hakim, Dunson, Elam, and Ellis*
100 Church Street
New York, NY 10007
Tel: (212) 356-0881


By:  /s/ Agnetha E. Jacob
      Agnetha E. Jacob
      Assistant Corporation Counsel