**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ OCT 1 8 2018 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x

ROY TAYLOR,                              :
                                         :
                    Plaintiff,           :
                                         :
        -against-                        :        MEMORANDUM & ORDER
                                         :
OBCC GRIEVANCE COORDINATOR               :        14-cv-4708 (ENV) (ST)
KENNEDY, OBCC C.O. SMITH, OBCC CAPT.     :
ELAM, OBCC WARDEN WETTINGTON,            :
SOCIAL SERVICE COUNSELORS BERRY and      :
HAKIM, OBCC CLOTHES BOX C.O. ELLIS,      :
OBCC C.O. CRUZ, EMTC C.O. DUNSON,        :
SOCIAL SERVICE COUNSELORS MOORE and      :
DENTRY, COORDINATOR MULVANNY, and        :
EMTC CLOTHES BOX C.O. SCIPION,           :
                                         :
                    Defendants.          :
------------------------------------------------------- x

VITALIANO, D.J.

On August 6, 2014, plaintiff Roy Taylor initiated this action, pursuant to 42 U.S.C. §

1983, seeking a declaratory judgment, compensatory damages, and punitive damages. He

alleged violations of his civil rights arising from his incarceration at the Otis Bantum

Correctional Center ("OBCC") on Rikers Island. Compl. (ECF No. 1). Defendants have moved

for summary judgment. Defs.' Mot. for Summ. J. (ECF No. 80) ("Mot."). For the reasons set

forth below, defendants' motion is granted in its entirety.

Background

Taylor filed several grievances while incarcerated in OBCC and pursues relief here,

having failed to obtain satisfactory relief there. Given the nature of the claims, that is,

challenging his treatment in the City jail, careful scrutiny must be given to the administrative

remedies available to Taylor and his exhaustion of them. Any failure to exhaust will ordinarily

prove fatal.

## I.     The Grievance Process

OBCC is administered by the New York City Department of Correction ("DOC").  DOC maintains an administrative apparatus to review grievances known as the Inmate Grievance and Request Program ("IGRP").  Defs.' Rule 56.1 Statement of Material Facts Not in Dispute ¶ 1 (ECF No. 81) ("Defs. 56.1").[1]  The program requires inmates with grievances to file a grievance form with IGRP staff and to proceed through three stages of appeal.  *Id.* ¶ 3.  Schematically, it is a simple process.  To file a grievance, an inmate fills out an IGRP Statement Form and deposits it in a designated box at the facility, delivers it to the IGRP office, or gives it to the IGRP staff. *Id.* ¶ 4.  IGRP staff must then provide the inmate with a receipt of filing within two days.  *Id.* ¶ 5. If the inmate does not receive such a confirmation, he must resubmit the grievance.  *Id.*  On the processing side, after receiving the inmate's grievance form, IGRP staff must, within five business days, (i) investigate the grievance and propose an informal resolution, (ii) dismiss and close the grievance, or (iii) refer the grievance to another level for resolution.  *Id.* ¶ 6.

If the inmate does not accept an informal resolution proposed by IGRP staff or does not receive a timely disposition, he must next request a formal hearing before the Inmate Grievance Resolution Committee ("IGRC").  *Id.* ¶ 10.  Within five business days of receiving an inmate's request for a hearing, IGRC must conduct the hearing, indicate its disposition on a form, and deliver the form to the inmate.  *Id.*  If the inmate does not accept IGRC's proposed resolution or does not receive a timely disposition, he must request leave to appeal to the commanding officer.

---

[1] As required by Local Civil Rule 56.2, defendants provided the appropriate notice to a *pro se* litigant who opposes a motion for summary judgment, along with the full texts of Fed. R. Civ. P. 56 and Local Civil Rule 56.1.  *See* Mot. at 3-8.  Notwithstanding, plaintiff did not file a counterstatement, as mandated by Local Civil Rule 56.1(b).

*Id.* ¶ 11.  Upon receipt of the inmate's request, the IGRP staff is to forward the relevant documentation to the office of the commanding officer.  *Id.* ¶ 12.  Within five days of receiving these documents, the commanding officer must set forth his disposition on a form and provide that form to the IGRP staff, who must then forward it to the inmate.  *Id.* ¶ 13.

If the inmate does not accept the commanding officer's proposed resolution or does not receive a timely disposition, he must request leave to appeal to the Central Office Review Committee ("CORC").  *Id.* ¶ 14.  Upon receiving the inmate's leave request, IGRP must forward the appropriate paperwork to IGRP's Executive Director, who shall then relay the documentation to each member of CORC and to the Executive Director of the New York City Board of Correction.  *Id.* ¶ 15.  Within 10 business days of receiving the documentation, CORC must release its decision on a form and send it to the inmate.  *Id.* ¶ 16.  CORC's disposition is the final decision on the inmate's grievance.  *Id.* ¶ 17.

## II.    Taylor's Grievances

As relevant to this action, Taylor filed grievances regarding four conditions of his confinement.  They spotlighted complaints regarding a lockdown, his clothing and bedding, outgoing mail, and access to social services and the IGRP.  The details of Taylor's complaints are previewed in the Court's decision denying defendants' motion to dismiss.  *See* Mem. & Order at 2-5 (ECF No. 40) ("MTD Op.").  On this motion, defendants train their fire on the procedural steps Taylor took to grieve them.

Taylor's first class of grievances arose from an alleged one-month lockdown of his housing unit, following a violent incident involving five or more inmates from rival gangs.  Defs. 56.1 ¶ 19.  Plaintiff claims that, as a result of the lockdown, he was denied access to the law library, *id.* ¶ 23, and unable to participate in Muslim religious services, *id.* ¶ 24.  In October

3

2013, he filed two grievance forms. It appears that IGRP staff never replied to either grievance, but, in any event, plaintiff did not appeal to the IGRC. *Id.* ¶ 26. Although Taylor asserted that he took steps to appeal his grievances, MTD Op. at 4, the record does not reveal any formal appeals. Instead, as Taylor testified, he took it upon himself to circumvent the IGRP process by going "straight to the central office," Tr. of Dep. of Roy Taylor at 16:6 (ECF No. 83-1) ("Taylor Tr."), or "directly to the commissioner," *id.* at 30:8; Defs. 56.1 ¶ 27. He also sent a barrage of letters to various officials and outside organizations. MTD Op. at 4-5. Taylor filed a further grievance regarding a lack of supplies in the law library. Defs. 56.1 ¶ 28. IGRP proposed an informal resolution of this grievance, *id.* ¶ 29, which Taylor accepted and did not appeal, *id.* ¶ 30.

Taylor's next grievance concerned his clothing and bedding. He filed a grievance regarding the lack of "thermals" during the lockdown, *id.* ¶ 34, but did not receive a reply from IGRP staff, nor did he appeal to IGRC, *id.* ¶ 35. He claims that he then sent his grievance directly to the DOC Commissioner. *Id.* ¶ 36.

In rapid fire, plaintiff also filed four grievances regarding the treatment of his outgoing mail. *Id.* ¶ 39. One grievance was investigated, but there is some dispute as to whether Taylor ever received the IGRP staff's proposed disposition. *Id.* ¶¶ 41, 43. It is uncontested, however, that he did not appeal the disposition to IGRC. *Id.* ¶ 42. Instead, Taylor claims that he sent the grievance directly to the DOC Commissioner. *Id.* ¶ 44. Taylor's next two grievances went unanswered, and he did not appeal them, *id.* ¶¶ 45-46, instead writing directly to the DOC Commissioner, *id.* ¶ 47. His final grievance was treated as his first, with some dispute as to whether he received the IGRC staff's proposed disposition, *id.* ¶¶ 49, 51, but, again, all agree that he did not appeal the disposition or lack of one, *id.* ¶ 50, and, instead, sent his grievance

4

directly to the DOC Commissioner, *id.* ¶ 52.

Finally, plaintiff filed two grievances regarding his limited access to social services and the IGRP staff's unresponsiveness to his previous grievances. *Id.* ¶¶ 56, 60. As to the first complaint, Taylor accepted the staff's proposed resolution, and did not appeal. *Id.* ¶ 58. As to the second, he says he received no reply, and, it is uncontested, he did not appeal. *Id.* ¶ 61. He instead wrote, in lieu of appeal, directly to the DOC Commissioner. *Id.* ¶ 63. All in all, the record shows that Taylor repeatedly filed grievances and never appealed unsatisfactory results through the channels of the IGRP process. Each time, he either accepted the IGRP staff's resolution or displayed scorn for the administrative process.

III.    Taylor's Familiarity with the IGRP Process

Taylor's failure to exhaust his administrative grievance remedies comes as no surprise on this motion. Indeed, in its earlier ruling on defendants' motion to dismiss, the Court concluded that Taylor "did not exhaust his administrative remedies" because "he did not timely file the appropriate forms to appeal any one of his several grievances through each of the four grievance stages." MTD Op. at 11. But, since that finding did not necessarily bolt the door shut, the Court allowed limited discovery related to the question of "whether the prisoner's failure to exhaust may be excused" because it was then unclear whether Taylor "was []aware of the grievance procedures." *Id.* at 12 (citations omitted). Consequently, with discovery now complete, the Court can turn to Taylor's knowledge of the appeals process.

Beyond genuine dispute, the record evidence shows that, upon his arrival at the jail facility, plaintiff signed an inmate intake card acknowledging his receipt of a copy of the Inmate Handbook. Defs. 56.1 ¶ 64. Although he testified at his deposition that he does not recall

whether he received the Handbook at that time,[2] Taylor Tr. at 9:21-10:4, he did acknowledge that he has actually received the Handbook twice, *id.* at 10:5-9, and has, in fact, reviewed sections of it, *id.* at 10:18-21. More significantly, plaintiff unambiguously conceded that he is "quite familiar with the grievance procedures," having reviewed them in the law library. *Id.* at 10:23-24. He accurately described the IGRP process, including the availability of appeals. *Id.* at 12:5-13:16. Far from claiming unawareness of the protocol for appeals, Taylor repeatedly asserted, as he has throughout this litigation, that he chose not to file appeals because various offices had been unresponsive to his grievances. *See, e.g., id.* at 15:4-16:14; Pl.'s Opp'n to Defs.' Mot for Summ. J. ¶¶ 2, 10 (ECF No. 86).

IV.    Procedural History

On August 6, 2014, plaintiff filed the complaint. Compl. On February 10, 2015, the Court dismissed his claims against several defendants, given their lack of personal involvement, Eleventh Amendment immunity, or statutory obstacles. Mem. & Order (ECF No. 8).[3] Taylor subsequently filed a motion for reconsideration, Mot. for Reconsideration (ECF No. 9), which

---

[2] At least one district court has found that an inmate "indisputably received a copy of the Inmate Handbook, outlining the grievance process under the IGRP," given the fact that defendants had "submitted a copy of an inmate intake card bearing [his] signature," confirming distribution of the handbook, despite the inmate's "aver[ment] that he d[id] not believe he ever received the handbook." *Smith v. City of New York*, No. 12 Civ. 3303 (CM), 2013 WL 5434144, at *12-13 (S.D.N.Y. Sept. 26, 2013). That finding supported the court's determination to "charge[] [the inmate] with familiarity with the procedure outlined in the Handbook." *Id.* at *24. The same is true here, given that the intake card submitted by Taylor reflects the same acknowledgement. *See* Pl.'s Inmate Intake Card (ECF No. 83-3). But, the Court hardly needs to rely on the intake card alone. Taylor's confession to knowledge of the IGRP process at his deposition more than adequately establishes his familiarity with the protocol.

[3] Specifically, the Court dismissed as defendants the New York State Department of Corrections and Community Supervision, the chairman of the Board of Parole, Tina M. Stanford, Administrative Law Judge Eva Urrutia, DOC, and the City of New York.

the Court denied, Mem. & Order (ECF No. 11). The Court later denied several defendants'

motions to dismiss and allowed limited discovery as to administrative exhaustion. MTD Op. On

January 9, 2018, defendants filed the present motion for summary judgment. Mot.

## Legal Standard

A district court must grant summary judgment to the moving party if "there is no genuine

dispute as to any material fact and the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91

L. Ed. 2d 265 (1986). A court's responsibility in assessing the merits of such motions is not to

try issues of fact, but merely to "determine whether there *are* issues of fact to be tried." *Sutera v.*

*Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (quoting *Katz v. Goodyear Tire & Rubber Co.*,

737 F.2d 238, 244 (2d Cir. 1984)); *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d

Cir. 2010) (noting that, on summary judgment, "the court 'may not make credibility

determinations or weigh the evidence'" (emphasis omitted) (quoting *Reeves v. Sanderson*

*Plumbing Prods.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000))).

The moving party bears the burden of demonstrating that there is no genuine dispute as to

any material fact, *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005), and the

motion court will resolve all ambiguities and draw all permissible factual inferences in favor of

the party opposing the motion, *see Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*,

391 F.3d 77, 83 (2d Cir. 2004); *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) ("If,

as to the issue on which summary judgment is sought, there is any evidence in the record from

which a reasonable inference could be drawn in favor of the opposing party, summary judgment

is improper."); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir. 1994) (noting that

summary judgment may be granted "only when no rational jury could find in favor of the nonmoving party"); *Park Electrochemical Corp. v. Cont'l Cas. Co.*, No. 04-cv-4916 (ENV) (ARL), 2011 WL 703945, at \*2 (E.D.N.Y. Feb. 18, 2011) ("A Court must construe all evidence in the light most favorable to the nonmoving party . . . .").

Whether a fact is material is dictated by the substantive law governing the claim on which summary judgment is sought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Heilweil*, 32 F.3d at 721 ("Only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute."). Thus, where the moving party "will bear the burden of proof at trial," that party bears the initial procedural burden at summary judgment of demonstrating that undisputed facts "establish the existence of [each] element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322-23.

If the moving party meets its initial burden, the burden shifts to the nonmoving party. *See George v. Reisdorf Bros., Inc.*, 410 F. App'x 382, 384 (2d Cir. 2011) (summary order). The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Instead, the nonmoving party can prevail by "designat[ing] specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c). If the evidence favoring the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

In making those assessments, the Court is mindful, of course, that a *pro se* party's filings must be "liberally construed" in favor of that party and are held to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 66 L. Ed. 2d (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)). The Court must, therefore, read *pro se* briefs "to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).

## Discussion

I.    The PLRA Exhaustion Requirement

Section 1983 creates a cause of action against "any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or laws of the United States." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). As the cause of action is created by statute, a claimant, obviously, must comply with requirements set by statute. The Prison Litigation Reform Act ("PLRA") establishes specific procedures that prison inmates must follow before bringing claims under § 1983. Of particular significance is the statute's exhaustion requirement, which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). Importantly,

a prisoner's administrative remedies "are not defined by PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). Therefore, whether Taylor's claims may be heard here depends on whether he exhausted the remedies available through IGRP. Meaning, in short, he was required to proceed through all steps of the IGRP process before commencing this action, unless any noncompliance was excused by law.

With simple reflection on Taylor's account of what happened, it is indisputable that he did not take the actions necessary to exhaust his administrative remedies at the jail. He tells us that he never filed appeals with respect to any of his grievances. Taylor either accepted the IGRP staff's resolution of his complaints or chose not to appeal when his grievances went unanswered. Having failed to proceed through "*all* levels of the IGRP process," Taylor did not physically take any of the steps necessary to exhaust his administrative remedies, as required by PLRA. *See Pierre-Louis v. Martinez*, No. 12-cv-2240 (NGG) (LB), 2014 U.S. Dist. LEXIS 115236, at *9 (E.D.N.Y. Aug. 18, 2014). The only straws left to grasp are whether Taylor's informal attempts at appeal are to be given any weight, whether administrative remedies were unavailable, and whether Taylor's failures to exhaust may be excused.

II.     No Cafeteria-Style Exhaustion

Taylor's letters to the Commissioner do not constitute administrative exhaustion satisfactory under PLRA. Exhaustion need not only be complete but must also be "proper." *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). The inmate must "compl[y] with the [prison grievance] system's critical procedural rules." *Id.* at 95. An inmate cannot exhaust his administrative remedies if he "bypass[es] deliberately the administrative process by flouting the agency's procedural rules." *Id.* at 97. In other words, "'procedurally

defective administrative grievance[s] or appeal[]s' fail to satisfy PLRA's exhaustion requirements." *Riles v. Buchanan*, 656 F. App'x 577, 579 (2d Cir. 2016) (summary order) (alterations in original) (quoting *Woodford*, 548 U.S. at 83-84). For this reason, plaintiff's letters to the Commissioner are, on the question of exhaustion, immaterial. Although those letters may have represented attempts to secure further administrative process before filing a lawsuit, they were not procedurally proper attempts at exhaustion. PLRA was not designed solely to "reduce[] the quantity of prisoner suits" but was also intended to "improve[] the quality of those prisoner suits that are eventually filed" by not only facilitating but requiring the "creation of an administrative record." *Woodford*, 548 U.S. at 94. Therefore, although Taylor's letters to the Commissioner may have delayed his filing of this suit, they did not represent a proper use of the administrative process and did not exhaust his remedies within the meaning of PLRA.

III.    Remedies Were Not Unavailable

Plaintiff laments that administrative remedies were unavailable to him because his grievances often went unanswered. Notwithstanding what Taylor perceived to be a staff deaf ear, PLRA does not excuse exhaustion merely because prison officials have been unresponsive. The "failure [of prison officials] . . . to respond to . . . grievance[s] (even if [they were] received) does not excuse plaintiff's failure to exhaust all levels of administrative appeal of those grievances." *Angulo v. Nassau County*, 89 F. Supp. 3d 541, 551 (E.D.N.Y. 2015); *accord George v. Morrisson*, 06 Civ. 3188 (SAS), 2007 WL 1686321, at *3 (S.D.N.Y. June 4, 2007) ("[E]ven when an inmate files a grievance and receives no response, he must nevertheless properly exhaust all appeals before his grievance is considered exhausted." (emphasis and footnote omitted)). Rather, exhaustion may be excused only if administrative remedies were unavailable to the inmate, if defendants "forfeited the affirmative defense of non-exhaustion by

failing to raise or preserve it," or if "the defendants' own actions inhibit[ed] the inmate's exhaustion of remedies." *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). Here, there is no question of forfeiture, so the Court must consider only whether administrative remedies were unavailable or defendants' own actions inhibited exhaustion.

The test for unavailability is objective. Administrative remedies are available if "'a similarly situated individual of ordinary firmness' [would] have deemed them available." *Id.* at 688 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Taylor's primary argument is that administrative remedies were unavailable because prison officials did not respond to some of his formal complaints. This is the only reason Taylor gives to justify his decision to circumvent the IGRP appeals process and to write directly to the Commissioner. Taylor's "perception," however, that the "grievance program was ineffective or that the filing of grievances was futile is insufficient to [excuse noncompliance with] the PLRA's exhaustion requirement," *Shariff v. Coombe*, 655 F. Supp. 2d 274, 286 (S.D.N.Y. 2009) (citation omitted).

Nonetheless, "an administrative remedy is not [considered] 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." *Butler v. Viscusi*, No. 11-cv-4844 (JFB) (WDW), 2014 WL 1407262, at *7 (E.D.N.Y. Apr. 11, 2014) (citation omitted). In such a case, the district court must look for evidence of "machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1860, 195 L. Ed. 2d 117 (2016).

Taylor claims that IGRP staff's failure to respond to his grievances on each occasion was a means of preventing him from pursuing his remedies. However, this Court has already held that "defendants' silence did not prevent Taylor from pursuing his remedies" because "IGRP specifically contemplates that prison officials may fail to respond to grievances." MTD Op. at

11. In other words, because inmates may file appeals when IGRP staff are unresponsive, Defs. 56.1 ¶¶ 11, 14, defendants' silence did not render jail administrative remedies unavailable but, rather, enabled Taylor to use the appeals process, which he failed to do. "[U]nder the IGRP, a prisoner who does not receive a response [to] a grievance within five days but fails to request a hearing is not excused from the requirement of exhaustion . . . ." *Malik v. City of New York*, No. 11 Civ. 6062 (PAC) (FM), 2012 U.S. Dist. LEXIS 118358, at *21 (S.D.N.Y. Aug. 15, 2012). It follows that Taylor's claim that his grievances went unaddressed is no excuse here.

It is true, though, that in certain situations, administrative remedies may be deemed unavailable if "an administrative procedure . . . operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859 (citing *Booth v. Churner*, 532 U.S. 731, 736, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001)). This is the case "where the relevant administrative procedure lacks authority to provide any relief." *Id.* (citing *Booth*, 532 U.S. at 736 & n.4). By Taylor's own testimony, that is not the case here. Prison officials clearly had authority to provide relief, and the IGRP was not a dead end. Indeed, Taylor's grievances were answered, and he accepted their resolution, on at least two occasions. *See* Defs. 56.1 ¶¶ 29, 58.

Still, there is another circumstance that might excuse the failure to exhaust. A court may find administrative remedies to have been unavailable if the administrative procedure is "so opaque" that "no ordinary prisoner can discern or navigate" it. *Ross*, 136 S. Ct. at 1859. It is not a refuge saving this lawsuit. Taylor's successful uses of the process demonstrate that IGRP was not opaque. Moreover, Taylor accurately described the process at his deposition, Taylor Tr. at 12:5-13:16, and attributed his noncompliance to perceived futility rather than opacity or confusion.

13

Finally, the record unmistakably reveals that Taylor "continued to file grievance after grievance during the period of alleged unavailability," which undermines his claim that he could not access administrative remedies. *See Kasiem v. Switz*, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010). Unquestionably, administrative remedies were available to plaintiff, and, absent a valid excuse, he was required to exhaust them.

IV.    Awareness of Available Remedies

The disposition of Taylor's other contentions is prologue here. Though the Court's order on defendants' motion to dismiss left open the question of whether plaintiff's failure to exhaust could be excused on the ground that "he was unaware of the grievance procedures," MTD Op. at 12 (citation omitted), that question now has an unequivocal answer: "No." With discovery complete, no ground for excuse exists. In his deposition, Taylor stated expressly that he is "quite familiar with the grievance procedures" and has reviewed them in the law library. Taylor Tr. at 10:23-24. He accurately described the appeals process and explained, yet again, that he circumvented the process because he believed it to be futile, not because he did not understand it. *See, e.g., id.* at 15:4-16:14. It is now clear that plaintiff was aware of the available administrative remedies and consciously disregarded them. Having failed to exhaust his administrative remedies, Taylor is barred from seeking relief in federal court for the grievances he alleges in his complaint.


Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety.

The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this

Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to enter judgment accordingly, to mail a copy of this order to plaintiff, and to close the case.

So Ordered.

Dated: Brooklyn, New York
September 29, 2018

/s/ USDJ ERIC N. VITALIANO

ERIC N. VITALIANO
United States District Judge